429 So.2d 213 (1983)
James G. FORSTALL
v.
HOTEL DIEU HOSPITAL, et al.
No. 13019.
Court of Appeal of Louisiana, Fourth Circuit.
February 25, 1983.
Rehearings Denied March 24, 1983.
*214 A.D. Freeman and Charlotte Hayes, New Orleans, for plaintiff-appellee.
James E. Shields, Gordon F. Wilson, Jr., Dodge, Friend, Wilson & Spedale, New Orleans, C.T. Williams, Blue, Williams & Buckley, Metairie, for defendants-appellants.
Before SCHOTT, GARRISON and WILLIAMS, JJ.
WILLIAMS, Judge.
This is an appeal from a judgment finding defendant, Dr. Nick J. Accardo guilty of malpractice and awarding plaintiff $250,000.00 in damages.

FACTS:
Plaintiff was 23 years old when he sought medical treatment for recurvatum of his knee. In simple terms, plaintiff was suffering from a backward bow in his right leg. After discussion with three orthopedic surgeons, he chose Dr. Accardo, one of the doctors with whom he had consulted, to perform the surgery needed to correct the problem. The medical procedure required to correct this problem is not without possible serious complications. The procedure performed on the plaintiff was an osteotomy, which is the surgical breaking and re-setting of a bone.
One of the possible complications of an osteotomy is "compartment syndrome." Compartment syndrome involves a build-up of fluid in the compartment of the leg and results in damage to the nerves and muscles. After the osteotomy, plaintiff developed the compartment syndrome. A fasciotomy, a cutting of the tissue which holds the muscle in place, was performed on the leg to relieve the pressure. After this procedure, apparently the muscles improved somewhat. The artery in the leg was not injured. The incision was left open to heal.
Plaintiff and his mother noticed an oozing and foul odor appearing from the open incision. In December, he checked into the Hotel Dieu Hospital to have the incision closed and the dead tissue debrided from the leg. Shortly after admission, he developed a high temperature and was later discovered to have both an aerobic and an anaerobic infection in the leg. Several operations were required to debride large amounts of muscle tissue from the plaintiff's lower leg because of the infection.
Plaintiff filed suit against Dr. Accardo and Hotel Dieu Hospital. After trial, the jury awarded the plaintiff $250,000.00. The verdict was against Dr. Accardo and not against Hotel Dieu. The judge limited the award against Dr. Accardo to $100,000.00, plus interest and costs and the Louisiana Patient Compensation Fund ["Compensation *215 Fund"] was held liable for the remainder. This was done pursuant to the Louisiana Medical Malpractice Act. La.R.S. 40:1299.41 et seq.
The Compensation Fund and Dr. Accardo filed this appeal. The plaintiff, after failing to have the Compensation Fund's appeal dismissed, answered the appeal, raising the issue of the constitutionality of the Medical Malpractice Act and seeking a clarification of the date from which interest would run on the judgment.
Five issues are presented on appeal by the various parties: (1) the correctness of the jury verdict; (2) quantum; (3) constitutionality of the limitation of liability imposed by the Medical Malpractice Act; (4) whether the Compensation Fund should have been made a party to the action; and (5) the date from which interest runs on the judgment.

JURY VERDICT
Much testimony was presented at trial as to the care received by the plaintiff during his post-operative recovery. Much of the controversy concerned the exact time that plaintiff was diagnosed as having suffered compartment syndrome and what steps were taken at what time to relieve the condition. A large amount of testimony was centered around the records of the nurses and doctors who examined and treated the plaintiff.
The central factual issue emerging from this evidence was whether Dr. Accardo observed his patient during the post-operation recovery period as closely as he should have. He testified that he visited plaintiff twice daily between August 23 and August 27 when plaintiff's compartment syndrome required emergency surgery. Circumstantial evidence, however, provided the jury with a basis to conclude that Dr. Accardo did not see plaintiff at all on August 25 or on the morning of August 26. Further evidence provided the jury with the basis to conclude that Dr. Accardo's failure to note the early symptoms of compartment syndrome because of his failure to make the necessary hospital visits to plaintiff resulted in damage to plaintiff's nerves and muscles which had progressed too far by the time the surgery was performed on August 27.
Dr. Accardo and expert witnesses appearing on his behalf testified that the treatment received by the plaintiff was proper. Their opinions, however, were based on the assumption, which the jury rejected, that Dr. Accardo saw plaintiff twice on August 25 and on the morning of August 26 and that he reviewed and evaluated the nurses' notes on each of these visits. Dr. George Rovere, who was qualified as an expert in the area of orthopedics, testified at trial for plaintiff that Dr. Accardo's treatment of the plaintiff constituted sub-standard medical care based on facts found by the jury.[1] Dr. Rovere further stated that Dr. Accardo's later attempt to close the wound without investigating for infection was also sub-standard care. He also testified that the devitalized tissue in the wound was directly related to the vascular difficulties suffered by plaintiff previously.
Although it is not considered malpractice for a physician to fail to diagnosis a problem correctly, a physician nevertheless is required to follow customary standards of care required by others in the same field or specialty. See, e.g. Borne v. Brumfield, 363 So.2d 79 (La.App. 4th Cir.1978); Lauro v. Travelers Insurance Co., 261 So.2d 261 (La.App. 4th Cir.1972); Percle v. St. Paul Fire and Marine Ins. Co., 349 So.2d 1289 (La.App. 1st Cir.1977).
The Louisiana Supreme Court set forth the standard of care to which a specialist is held in Ardoin v. Hartford Accident & Indemnity Co., 360 So.2d 1331 (La.1978):
"[A] medical specialist is required by La. Civil Code Articles 2315 and 2316, and La.R.S. 9:2794, to exercise the degree of *216 knowledge or skill ordinarily exercised and possessed by physicians within his medical specialty..."
Id. at 1340. See also White v. Edison, 361 So.2d 1292, 1995 (La.App. 4th Cir.1978).
Although much of the evidence given at trial was conflicting, nevertheless there was competent evidence presented upon which a jury could reasonably find that plaintiff's injuries were caused by the sub-standard care provided to him by Dr. Accardo. Because of the limitation on review placed upon this court, we must affirm the decision of the trial jury. Canter v. Koehring Co., 283 So.2d 716 (La.1973).

QUANTUM
Both Dr. Accardo and the Compensation Fund argue that the award given to the plaintiff was clearly excessive. The plaintiff is a young man in his early twenties. He has already gone through at least eleven surgical procedures and is scheduled to undergo more. There is no doubt that his leg and foot are severely scarred. He has a noticeable limp and is restricted somewhat in his physical activities, although he can play golf. His foot is in an equinus position, i.e., with the toes pointed downward. The plaintiff testified at trial that he underwent excruciating pain as a result of his operations. Had plaintiff received adequate post-operative care after the osteotomy, he no doubt would have suffered some pain as a result. Nevertheless, because of the sub-standard care that he was found to have received, plaintiff was forced to undergo numerous other operations, and suffer more pain. In view of the scarring of his leg, his disability, and his past, present and future suffering, we cannot find that the jury abused its discretion in awarding $250,000.00 to the plaintiff. See Reck v. Stevens, 373 So.2d 498 (La.1979).

CONSTITUTIONALITY
In answer to the appeals filed by the defendant and the Compensation Fund, the plaintiff has raised the constitutionality of the Medical Malpractice Act.
This issue is not properly before this court at this time. The plaintiff has failed to raise this issue in the court below, and, therefore, is precluded from raising it on appeal. See, e.g. Johnson v. Welsh, 334 So.2d 395 (La.1976).

COMPENSATION FUND AS PARTY TO SUIT
The Compensation Fund has appealed the decision of the trial court casting it into judgment for $150,000.00 on the ground that it was never a party to the lawsuit, and, therefore, could not be held liable.
R.S. 40:1299.44 B provides the procedure by which funds are to be expended:
B. The State Treasurer shall issue a warrant in the amount of each claim submitted to him against the Fund on December 31 of each year. All claims shall be paid on or before January 15. The only claim against the fund shall be a voucher or other appropriate request by the commissioner after he received:
(1) a certified copy of a final judgment in excess of one hundred thousand dollars against a health care provider."
There is no doubt that in the present case Dr. Accardo is a health care provider as defined under the statute. The Compensation Fund does not need to be made a party to a suit because it does not have to be cast in judgment to disburse its funds. However, the trial court erred in ordering the Compensation Fund to pay any part of the judgment at this point. Collection by plaintiff of the excess over the one hundred thousand dollars for which Dr. Accardo is liable[2] is controlled by R.S. 40:1299.44 B quoted above. Receipt by the Commissioner of Insurance of a certified copy of the judgment triggers his responsibility to deliver the claim to the fund whose liability for payment is in turn triggered by a warrant issued against the fund by the state treasurer.

*217 INTEREST
In his answer to the appeal plaintiff asks that the judgment be clarified to explain its inclusion of interest from "date of judicial demand." Plaintiff is not entitled to interest from the date he filed suit because Dr. Accardo was not named as a defendant in his original petition. However, plaintiff is entitled to interest from the date he filed the request for review of his claim against Dr. Accardo by a medical review panel in accordance with R.S. 40:1299.47 A.
Accordingly, the judgment appealed from is affirmed, but is amended to read as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff, James G. Forstall, and against defendant, Nick J. Accardo, M.D., in the full sum of $250,000.00 together with legal interest thereon from the date plaintiff filed the request for review of his claim against Nick J. Accardo, M.D., pursuant to R.S. 40:1299.47 A until paid, and for all costs of the proceedings, provided that Nick J. Accardo, M.D., is not personally liable for said amounts in excess of one hundred thousand dollars in accordance with R.S. 40:1299.42 B(2).
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Commissioner of Insurance of the State of Louisiana, upon receipt of a certified copy of this judgment, comply with the provisions of R.S. 40:1299.44 B.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the fees of the expert witnesses who testified in this case are fixed at the sums as follows, to-wit:

Dr. George Rovere $400.00
Dr. H.R. Soboloff 250.00
Dr. George N. Byram, Jr. 100.00
Dr. Jack L. Winters 400.00
Dr. Daniel H. Johnson, Jr.
 (radiologist) 100.00
Dr. Marcus Stewart (by
 depositions) 150.00
Dr. George C. Battalora, Jr. 100.00
Sylvan J. Steinberg, Attorney 250.00
All nurses that testified 65.00 each

All jury fees and expert fees are taxed as costs.
AFFIRMED AND AMENDED.

ON APPLICATION FOR REHEARING
PER CURIAM.
Hotel Dieu Hospital has moved for a rehearing because in our original opinion we did not mention in our amended decree the dismissal of plaintiff's suit against Hotel Dieu. We did not because that portion of the trial court judgment was not before us on appeal. In plaintiff's answer to the appeals of the other defendants he limited himself to specific areas of relief as against them. He did not appeal from the dismissal of his suit against Hotel Dieu. We were not called upon to and did not consider Hotel Dieu's liability.
All rehearings are denied.
REHEARINGS DENIED.
NOTES
[1] Although Dr. Rovere practiced medicine in North Carolina, he nevertheless was competent to testify. In Ardoin v. Hartford Accident & Indemnity Co., 360 So.2d 1331 (La.1978), the Louisiana Supreme Court held the locality rule, i.e. using a standard of care found in the locality, inapplicable to medical specialists.
[2] R.S. 40:1299.42 B(2) limits Dr. Accardo's liability to one hundred thousand dollars. He is not liable for interest and costs over this amount and the judgment appealed from is erroneous in this regard.