JONES, Judge.
Appellants, Alain F. Cracco, M.D., his professional medical corporation, the New Orleans Bone and Joint Clinic, and the Hartford Insurance Group appeal a decision of the trial court awarding the appel-lee Donald Givens $165,000 in general damages and his wife, Jeannette Bowens, $5,000 for damages sustained as a result of Dr. Cracco’s care and treatment of Donald Givens.
Appellants cite three assignments of error by the trial court.
First, appellants argue that the plaintiffs did not carry their burden of proof as set forth in La.R.S. 9:2794. More specifically they argue that the plaintiffs did not prove that Dr. Cracco’s care and treatment of Donald Givens fell below the standard of care to be practiced by orthopedic surgeons in 1980, 1981 and 1982.
Secondly, appellants argue that the plaintiffs did not prove lack of informed consent prior to operations performed on Donald Givens on February 21, 1980, August 18, 1980, February 20, 1981 and October 20, 1982.
Third, appellants argue that the damage awards of $165,000 to Donald Givens and $5,000 to Jeannette Bowens is not warranted in view of the fact that the evidence presented failed to show that any deviation of Dr. Cracco caused harm to the plaintiff and that damages were suffered because of such a failure.
The appellants also argue on appeal that the trial court judgment dated June 25, 1991 casting Dr. Cracco liable for $170,000 should be reformed to reflect that as a qualified health care provider, Dr. Cracco is only personally liable for $100,000 for all malpractice claims arising out of injuries to any one patient.
*729 FACTS
Appellee Donald Givens was injured in a motor vehicle accident in November, 1979. He suffered a back injury and was originally treated at Ochsner Hospital and was later followed at the Rabin Industrial Clinic. He was subsequently referred to Dr. Alain Cracco whom he saw for the first time in January, 1980. Dr. Cracco followed a conservative course of treatment for two months. However, the appellee’s back pain continued. In February, 1980 Dr. Cracco recommended surgery. The benefits and risks attendant to that surgery were allegedly explained to the appellee and a right lumbar hemilaminotomy and discectomy of the L5-S1 level was performed. According to the appellee, the surgery performed in February, 1980 is not at issue in this case.
After the 1980 surgery, Dr. Cracco continued to treat the appellee. The appellee’s back pain continued. The appellee testified that during the summer of 1980 Dr. Cracco informed him that it was necessary to perform a back fusion to relieve his back pain. In July, 1980, the appellee signed a Consent to Medical Procedure Form which was identical to the one he signed prior to his first surgery. This form and the consent forms signed by the appellee and Dr. Cracco for subsequent surgeries (i.e. the forms signed on 8/17/80 and 2/11/81) contained the following boilerplate language:
I further authorize the doctors to perform any other procedure that in their judgment is advisable for my well being. This operation has been explained to me. Alternate methods of treatment, if any, have also been explained to me, as have the advantages and disadvantages of each. I am advised that though good results are expected, the possibility and nature of complications cannot be accurately anticipated and that, therefore, there can be no guarantee as expressed or implied either as to the result of surgery or as to cure.
Dr. Cracco testified that prior to the August 18, 1980 surgery he also gave the appellee a pamphlet detailing back surgery and explained the risks and known complications of the operation. That particular pamphlet was more detailed and gave more information concerning the risks attendant to back surgery. Although, the pamphlet specifically stated that it was not a consent form, it contained a signature block for the patient to sign indicating that he had read the pamphlet. For some unexplained reason, the pamphlet introduced by Dr. Cracco at trial was not signed by the appellee. The appellee, Donald Givens denied receiving the pamphlet.
The consent form signed by the appellee prior to the August surgery does not specifically list non-union as a known complication of the surgery and the appellee testified that he was not told that non-union was a well known complication of the surgery. Additionally, appellee testified that Dr. Cracco did not tell him that even if union was achieved, it was very likely his pain would not be relieved.
Dr. Williams, an orthopedic surgeon, called as an expert witness by the appellees testified that the surgery performed on the appellee on August 18, 1990 “could be expected to relieve pain in a very, very, small percentage of cases.” He also testified that the standard of care required Dr. Cracco to tell appellee that the fusion very likely would not relieve his pain. However, no evidence was presented to show that Dr. Cracco ever made such a statement to ap-pellee.
Following the August, 1980 surgery, ap-pellee continued to experience pain. In February, 1981 Dr. Cracco told the appellee that the fusion had not taken, thus appellee would need still another surgery. The additional surgery was performed by Dr. Cracco in February, 1981. The consent form for this surgery was signed nine days prior to surgery in Dr. Cracco’s office and like the first consent form neglected to mention that non-union was a complication of surgery. Additionally, appellee testified Dr. Cracco again failed to tell him that even if union was achieved the chance that he would be relieved of pain was small. Instead, according to the appellee, Dr. Cracco told him the surgery would relieve him of his back pain.
*730 The February surgery also failed to produce the desired results and appellee underwent still another surgery. The last surgery was performed at Charity Hospital. The consent form at Charity hospital specifically authorized Dr. Olabal and any associates that he chose to perform the surgery. Appellee testified that he did not consent to being operated on by Dr. Cracco at Charity. However, since the resident at Charity refused to perform the operation unless Dr. Cracco was present, Dr. Cracco testified that he performed that surgery. Dr. Cracco testified that the last fusion was considered a success in that fusion occurred. Appellee, Donald Givens, however, testified that he continues to have pain in his back.
Subsequent to the last surgery, Appellee Donald Givens instituted the instant litigation against Dr. Cracco, the clinic from which Dr. Cracco works, and his insurer, Hartford Insurance Company, alleging that Dr. Cracco negligently performed the first fusion attempt when he utilized an “H” graft technique. Appellee further alleged that Dr. Cracco failed to advise him that non-union was a well-known complication and that appellee likely would not be relieved of pain even if complete fusion was achieved. According to the appellee, he would not have consented to the fusions if he had been given this information.
The case was tried before a jury who returned a verdict in favor of the plaintiffs, awarding Donald Givens damages of $165,-000 and Jeannette Bowens Givens, his wife $60,000 for her consortium claim. On motion of the appellants, the trial court reduced Mrs. Given’s award to $5,000 and entered an amended judgment. It is from this amended judgment that Dr. Cracco appeals.
DISCUSSION AND LAW
The record indicates that the trial court made no findings of fact in this case. Rather the trial court simply entered a verdict in accordance with the verdict rendered by the jury.
The answers to interrogatories indicate that the jury answered yes to the following interrogatory:
Do you find that Dr. Alain F. Cracco lacked the requisite degree or knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill, with regard to Donald Givens, based upon the facts presented in this case?
The answers to interrogatories also indicate that the jury answered no to the following interrogatory:
If so, do you find that as a proximate result of this lack of knowledge or skill or failure to exercise this degree of care, Donald Givens suffered injuries that would not otherwise have been incurred?
The answer to the second question indicates that although the jury felt that Dr. Cracco had been negligent in his treatment of Donald Givens; such negligence did not result in any harm or damages to the plaintiff.
We agree with the appellants contention that the plaintiff failed to prove any negligence on the part of Dr. Cracco in the performance of the surgeries. In fact, none of the experts testified that the performance of the actual surgeries fell below the acceptable standard for this community. Thus the jury erred in making such a finding. However, this error was inconsequential since the jury also specifically found that the appellee did not suffer any damages as a result of any lack of skill on the part of Dr. Cracco.
The $165,000 awarded to the appel-lee by the jury represents damages the jury found he suffered because of the failure of Dr. Cracco to provide the appellee with the requisite information to allow him to give informed consent to the surgeries performed on the appellee’s back. For this reason, the issue to be addressed by this court is whether Dr. Cracco provided the plaintiff with the information needed to obtain informed consent to the surgery.
The jury answered yes to the following interrogatory:
*731 Do you find that Mr. Givens lacked the requisite information to provide an informed consent to the surgical care and treatment provided by Dr. Cracco on either February 21, 1980, August 18, 1980 or February 20, 1981?
In response to the next interrogatory, the jury found that Donald Givens sustained damages in the amount of $165,000. These answers indicate that the jury concluded that the defendant’s failure to provide the information needed precluded ap-pellee from being able to give informed consent to the surgeries performed by Dr. Cracco. The issue of whether informed consent was given is to a certain extent a factual issue. The issue was hotly contested at trial and is governed by the manifest error rule. Rosell v. ESCO, 549 So.2d 840 (La.1989). Nothing in the record indicates that the jury erred in making such a finding.
The appellee testified that he was involved in an automobile accident on November 28, 1979. As a result of the accident he began to experience pain in his lower back. Appellee was originally treated at Ochsner and the Fisher Rabin Clinic. He was subsequently referred to Dr. Crac-co. He saw Dr. Cracco for the first time in January, 1980. Dr. Cracco told him that he needed to have surgery to remove a disc. Dr. Cracco informed him that he would have pain after the surgery but that it would soon go away. After the first surgery, the appellee was in pain, but the pain did not go away. Dr. Cracco told him that he needed another surgery because he needed a fusion. According to appellee, Dr. Cracco told him that the fusion would work and that it would relieve the pain. Dr. Cracco did not discuss any alternatives to a fusion, nor did Dr. Cracco say anything to him about the possibility of a nonunion. Appellee testified that he would not have agreed to have the surgery if he had known that the surgery might not have relieved the pain or that several additional surgeries may have been needed to accomplish fusion. Appellee continued to have pain even after the last surgery. He adamantly claimed that each time he had surgery Dr. Cracco told him that it was necessary for him to have the surgeries in order to relieve the pain that he was experiencing and that Dr. Cracco did not tell him that one of the risks that he faced in having the surgeries was the risk of non-fusion.
Dr. Cracco testified that he never gave the appellee any warranties or guarantees that the surgery would be successful. After the myelogram of February, 1980, Dr. Cracco testified that he discussed the results with Donald Givens and told him what could be done, i.e. he could continue the same conservative treatment that he was undergoing which consisted of physical therapy or he could have the surgery. The purpose of the first surgery, according to Dr. Cracco was to relieve the right leg pain, not back pain. Dr. Cracco testified that he talked to the appellee prior to each surgery and explained the risks. He primarily relied upon language contained in the consent forms and an unsigned pamphlet which he testified he routinely gave to his patients to support his claim that he had adequately explained the risks attendant to the surgeries to Donald Givens. Dr. Cracco testified that he was sure he gave a copy of the pamphlet to Mr. Givens prior to his February surgery because he gave it to all his patients.
Dr. Williams, the appellee’s expert witness testified that the surgery performed by Dr. Cracco could be expected to relieve pain in a very, very, small percentage of cases and was not likely to relieve pain in a majority of cases. He further testified that the patient should be told the complications and alternatives to surgery and that it would be a deviation from the standard of care if a patient was not given all the facts about the surgery. Dr. Williams also testified that it was unlikely that any of the subsequent surgeries would relieve pain. Additionally, in terms of the latter two surgeries Dr. Williams testified that he would have informed the patient that the procedure probably would not have relieved his pain or improved his mobilization. Failure to so instruct the patient, according to Dr. Williams, would be a deviation from the standard of care. Further, Dr. Williams *732 testified that non-union was a known complication for such surgery.
Dr. Williams’ testimony, when read in its entirety was sufficient to sustain the credibility determinations that were made. For this reason, we cannot say that the jury erred in finding a lack of informed consent in this case.
The jury made credibility determinations on whether informed consent was obtained and resolved the credibility issues in favor of the appellee and against the appellant. Where there is a conflict in the testimony, reasonable evaluations of credibility and inferences will not be disturbed upon review by the appellate court. Rosell, supra.; Corbello v. Southern Pacific Transp. Co., 586 So.2d 1383 (La.App. 3rd Cir.1991).
The consent forms in this case appear to be almost identical to the forms examined by the court in Hondroulis v. Schuhmacher, 553 So.2d 398 (La.1988). In Hondroulis the court summarized the various factors that needed to be addressed in determining whether informed consent existed. The court preliminarily noted that
Where circumstances permit, the patient should be told the nature of the pertinent ailment or condition, the general nature of the proposed treatment or procedure, the risks involved in the proposed treatment or procedure, the prospect of success, the risks of failing to undergo any treatment or procedure at all, and the risks of any alternate methods of treatment. (cites omitted) [supra, at 411]
The testimony of all the witnesses indicates that the surgery performed on the appellee was not emergency surgery. Even Dr. Cracco testified that one alternative was for the appellee to continue the conservative course of treatment being pursued prior to the surgery. Thus, the physician had ample time to inform the appellee of the risks involved in the surgeries, the prospect of success, and the risks of failing to undergo any treatment at all. Nevertheless, the record shows that the appellee’s primary motivation for having surgery in each case was to relieve his pain. The expert testified that the likelihood of the surgery relieving pain was very small. Yet the record contains no evidence to suggest that Dr. Cracco ever informed the appellee of this fact. Nor did he apprise the appellee of the possibility that he would have to undergo additional surgeries should non-union occur. A reasonable person, having been advised of these risks, may very well have decided to forego the surgeries that Dr. Cracco performed on the appellee. Pursuant to the test enunciated in Hondroulis, supra, informed consent was lacking.
Pursuant to the provisions of La.R.S. 40:1299.42, a qualified health care provider cannot be held liable for any amount in excess of $100,000 in a malpractice claim because of injuries to any one patient. The record establishes that Dr. Cracco was a qualified health care provider. For this reason, appellants request to reform the judgment to reflect that Dr. Cracco is only personally liable for the first $100,000 of the judgment rendered against him is granted. Forstall v. Hotel Dieu Hospital, 429 So.2d 213 (La.App. 4th Cir.1983).
Both the original judgment and the amended judgment awarded intervenor, Charity Hospital of New Orleans, the sum of $4,551.50 to be paid from the first sums that plaintiffs receive in satisfaction of this judgment. CHNO urges the court to affirm this portion of the judgment.
In Hubbard v. Rudolph, 539 So.2d 642 (La.App. 4th Cir.1989) this court recognized the preferential right of payment of medical bills for services rendered a patient as a result of the negligence of a third party tortfeasor. Thus, the award of $4,551.50 to intervenors, CHNO is affirmed.
For the foregoing reasons the judgment of the trial court is amended to reflect that Dr. Cracco is only personally liable for $100,000 of the judgment, the balance is to be paid by the Louisiana Patient’s Compensation Fund. In all other respects, the judgment is affirmed.
AFFIRMED AS AMENDED.
LOBRANO, J., concurs.