527 So.2d 326 (1988)
Roberta KNOPFER
v.
The LOUISIANA PATIENT'S COMPENSATION FUND.
No. 88-CA-0290.
Court of Appeal of Louisiana, Fourth Circuit.
May 12, 1988.
Rehearing Denied July 29, 1988.
*327 Leonard A. Radlauer, New Orleans, for plaintiff-appellee.
Carruth, Cooper and Adams, William R. Carruth, Jr., Ambrose K. Ramsey, III, Baton Rouge, for defendant-appellant.
Before SCHOTT, BYRNES and LOBRANO, JJ.
BYRNES, Judge.
By this appeal the Louisiana Patient's Compensation Fund (LPCF) asserts that the trial court erred in awarding Roberta Knopfer $500,000. We affirm.

FACTS
On May 28, 1984, Knopfer, a forty-four year old oncological social worker, went to see Dr. McKinnon at Ochsner Hospital to have two moles removed. One was located on her abdomen and the other was on the upper right thigh. After removing the moles, Dr. McKinnon sent them to the Pathology Department at Ochsner where Dr. Willis examined the biopsy specimens and found them to be benign. Subsequently, in November 1985 Dr. Stolier at Southern Baptist Hospital examined a spot of discoloration which had appeared on the site of the biopsy scar on Knopfer's right upper thigh. Dr. Stolier later removed a small mole from the scar area and sent it to the Southern Baptist Hospital Pathology Department for further examination. The pathology report concluded that the mole was metastatic melanoma (a form of cancer which had spread). The pathologist then reviewed the specimen slides taken from the moles removed from Knopfer in May 1984. This examination revealed that the moles, which were previously thought to have been benign, were in fact, malignant. Dr. Stolier then referred Knopfer to Dr. McBride in Houston for a second opinion. Dr. McBride, a surgical oncologist, decided to excise the recurrent area and the likely area of spreadthe first level lymph nodes adjacent to the scar. Dr. McBride removed three of Knopfer's lymph nodes which later tested positive for melanoma. Knopfer was hospitalized in Houston for eleven days, then returned to New Orleans to convalesce. She later developed an infection in the surgical site which required hospitalization for one week. The operation left a scar measuring approximately 7 by 11 inches covering portions of her right upper thigh and right groin. Knopfer missed a total of five and one-half months of work which resulted in lost wages totalling $11,000. Medical expenses and transportation to and from Houston for treatment totalled over $32,000.
In March 1986, Knopfer presented a medical malpractice claim to the Commissioner of Insurance against Ochsner Hospital and Dr. Willis for misdiagnosis of the May, 1984 biopsy results. The parties admitted liability for their diagnostic error and tendered to Knopfer the limit of their insurance policy$100,000. Knopfer then proceeded to trial against LPCF seeking tort recovery and future medical expenses. After hearing the evidence, the trial court took the matter under advisement and later entered judgment in favor of Knopfer for $500,000 plus future medical expenses. Because Ochsner and Dr. Willis had already *328 settled with Knopfer for the $100,000 limit of their insurance policy, LPCF was cast in judgment for $400,000 under R.S. 40:1299.44 C(5) and 40:1299.42 B(1). This appeal followed.

ASSIGNMENTS OF ERROR
By its first assignment of error appellant asserts that the trial court erred by awarding damages not supported by the evidence. We disagree. To recover in the instant case, Knopfer was required to prove that Ochsner and Dr. Willis failed to exercise the requisite standard of care in her treatment and that this negligence caused her to suffer injuries which would not otherwise have occurred. R.S. 9:2794. Appellant argues that Knopfer failed to prove that she sustained injuries as a result of the biopsy misdiagnosis which would not otherwise have occurred as a consequence of the melanoma.
A total of four medical experts testified either at trial or by deposition regarding the change in Knopfer's medical condition from the date of the misdiagnosis to the date when the melanoma was diagnosed and treated. Appellant relies heavily on the trial testimony of its expert, Dr. Reed, a pathologist, who was the only expert witness to testify that Knopfer had metastatic melanoma in May 1984. From thus assumption he concluded that her chances of surviving for five years in 1984 were 30 to 40 percent which is approximately the same as her current prognosis. From this, defendant contends that Knopfer has sustained no damage from the misdiagnosis in 1984.
On the other hand, Dr. Krementz, an oncological surgeon, testified at deposition that based on the biopsy slide taken in May 1984, there was only a "forty percent plus or minus" chance of microscopic spread of melanoma. In other words it was unlikely that the melanoma had already metastasized at that time. He further opined that the prognosis in May 1984 "was reasonably good"in the seventy plus percentage range of survivalproviding there was no metastasis of the melanoma, and that conventional surgical treatment was received. If the melanoma had metastasized in May 1984, Dr. Krementz stated the survival rate "would be less". When asked what chance of survival he would give Knopfer after the findings of metastatic melanoma were revealed by the December 1985 surgery, Dr. Krementz stated 25 to 35 percent over a five year period.
Dr. Coleman, a dermatologist trained in surgical oncology also testified for Knopfer. He agreed with the survival estimates given by Dr. Krementz and he stated that the one and one-half year delay in diagnosis of the melanoma made it "more likely than not ... that she has a higher risk of death from melanoma".
Finally, Dr. McBride, who performed the wide excision and lymph dissection on Knopfer, testified that she had about a 65 percent survival rate over a five year period. Dr. McBride made this prognosis based on the fact that Knopfer had three cancerous nodes in her groin but had no cancer in the "Cloquet node" and no remaining positive signs of melanoma after the cancer was surgically removed. When asked what treatment he would have given Knopfer had the melanoma been detected in May 1984, he responded, "[t]hat would vary terrifically with whoever [sic] saw her. I personally would have done a wider excision of the area". Dr. McBride did not offer an estimate of Knopfer's chances of survival in May 1984.
In our opinion, Knopfer had to prove by a preponderance of the evidence that the erroneous diagnosis in May 1984 significantly decreased her chance of survival. See Hunter v. Officer of Health Services, 385 So.2d 928 (La.App. 2nd Cir. 1980). Although the expert testimony was conflicting as to whether the misdiagnosis caused Knopfer to fall into a category of persons in which there was little chance of survival, there was in our opinion, sufficient evidence to support the trial court's judgment. Both Dr. Krementz and Dr. Coleman testified that prior to the May 1984 misdiagnosis, Knopfer had approximately a 70 percent chance of surviving over a five year period, assuming no metastatic activity in May 1984. These experts *329 further testified that as of December 1985, Knopfer's chance of surviving for five years had declined to 25 to 30 percent. While this testimony is in conflict with the testimony of Drs. McBride and Reed, we cannot say that the trial court erred by accepting the testimony of Dr. Krementz and Dr. Coleman over the testimony of the other experts.
Having found that Knopfer did prove that the misdiagnosis significantly reduced her chance of survival, we now address the question of whether the evidence supports an award of $500,000. In deciding this issue we must first determine if the record clearly reveals that the trial court abused its discretion in making its award. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). Unfortunately, the award given in the instant case was made in globo, leaving this court without an itemized list of damages. Nonetheless, we conclude that the record supports the award. The evidence as viewed by the trial court shows that Knopfer's chance of surviving for a five year period decreased from approximately 70 percent to approximately 35 percent. In our opinion, this reduction in life expectancy and its probable effect on the quality of Knopfer's life more than justifies the award given. To rule otherwise would ignore the special and general damages proven at trial and lessen the gravity of defendant's negligence. This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2
LPCF alleges as a second assignment of error that the award of future medicals was not supported by the evidence. We disagree. In our treatment of assignment of error number one, we concluded that Knopfer proved that as a result of the misdiagnosis her chances of survival over a five year period were decreased by nearly one half (from 70 percent to 35 percent). Accompanying this decrease in survival rate is the increased likelihood that Knopfer will require future medical care. The fact that she may have required future medical treatment even if the melanoma had been detected in May 1984 does not undermine the convincing argument that because of the misdiagnosis, it is now considerably more likely that she will require medical care in the future. Under the circumstances, we will not disturb the trial court's award of future medicals.
For the above reasons, the trial court's award is affirmed. Costs of this appeal are assessed to LPCF.
AFFIRMED.