625 So.2d 566 (1993)
Marie Louise HEBERT, et vir, Plaintiffs-Appellants,
v.
ABBEVILLE GENERAL HOSPITAL, et al., Defendant-Appellee.
No. 92-1297.
Court of Appeal of Louisiana, Third Circuit.
October 6, 1993.
James E. Fontenot, Abbeville, for plaintiff-appellant Marie Louise Hebert.
René Joseph Pfefferle, Baton Rouge, for defendant-appellee Abbeville General Hosp., et al.
Joel Edward Gooch, Lafayette, for defendant-appellee La. Patient's Compensation Fund.
Before DOMENGEAUX, C.J., and SAUNDERS and WOODARD, JJ.
SAUNDERS, Judge.
This is an appeal by plaintiffs-appellants, Marie Louise Hebert and her husband, Elie Menard, from the trial court's grant of summary judgment in favor of intervenor-appellee, Louisiana Patient's Compensation Fund (Fund), which resulted in the dismissal of plaintiffs' lawsuit.
We find that the trial court erred in its grant of summary judgment in favor of intervenor-appellee, Louisiana Patient's Compensation Fund, and as such, reverse the judgment of the trial court and reinstate plaintiffs' petition filed April 8, 1991.

FACTS
The trial court set forth the relevant facts and prior proceedings in its original Reasons for Ruling on defendant's motion for summary judgment, in pertinent part, as follows:
"This case arises out of two incidents which are claimed by plaintiffs to be acts of medical malpractice by Abbeville General Hospital. The first incident occurred on *567 March 9, 1987 when Marie Hebert allegedly stepped and fell on a cover to an I.V. needle on the floor of her room in the hospital. The second incident occurred on March 19, 1987, when Marie Louise Hebert fell in her room when she slipped on an I.V. needle which penetrated into her foot.
"The Louisiana Patient's Compensation Fund claims that these incidents have no basis in medical malpractice, but are acts of negligence by Abbeville General Hospital.
"The medical review board rendered an unfavorable decision in this case and plaintiff filed suit against Abbeville General Hospital. Plaintiffs have settled their case against Abbeville Hospital. Judgment of dismissal with full prejudice was signed by the court dismissing plaintiffs' case against the hospital, and plaintiffs executed a document which contained the language "hold harmless and indemnity" in favor of Abbeville General Hospital. Mover claims that the manner in which plaintiffs settled their case against Abbeville General Hospital and attempted to preserve their rights against the Louisiana Patient's Compensation Fund is not authorized by LSA-R.S. 40:1299.44(C).
"Plaintiffs claim that they entered into a partial settlement with the hospital in accordance with LSA-R.S. 40:1299.42(D)(5). The two claims pending were settled separately. The first claim was settled for $10,000 and therefore does not effect liability under LSA-R.S. 40:1299.42(B)(2). The second claim was settled for $100,000, the statutory limit of liability, in which the plaintiffs executed a release in favor of Abbeville Hospital and reserved all their rights against the Louisiana Patient's Compensation Fund. Thereafter a judgment of dismissal was filed, dismissing the defendant, Abbeville General Hospital, with prejudice. The judgment of dismissal specifically reserved any and all rights against the "Fund". On April 8, 1991, the same day of the settlement, plaintiff filed an amended petition against the Louisiana Patient's Compensation Fund for excess funds as provided for by LSA-R.S. 40:1299.42(D)(5).
"A peremptory exception of No Cause of Action on the premise that the claim could not be continued against the Louisiana Patient's Compensation Fund because the defendant Hospital was dismissed with prejudice has been overruled by this court on July 8, 1991. The Third Circuit Court of Appeals denied writ, holding that there was no error in the trial courts ruling and that a claim may be executed against the Louisiana Patient's Compensation Fund, in spite of dismissal with prejudice of the settling health care provider `... so long as statutory scheme and procedural requirements of LSA-R.S. [40:1299.44] are otherwise complied with.'"
After the Third Circuit's denial of defendant's writ on the exception of no cause of action, the Fund moved for summary judgment, which the trial court originally denied. The Fund then moved for a new trial, which the trial court granted, together with the grant of the Fund's motion for summary judgment.

ASSIGNMENT OF ERROR
Plaintiffs/claimants contend that the trial court erred in dismissing their amended petition seeking excess damages from the Louisiana Patient's Compensation Fund, pursuant to the Fund's motion for summary judgment. The issue before this court is whether the plaintiffs, in settling their claims with Abbeville General Hospital (Hospital), followed the proper statutory procedure in preserving their claim for excess damages against the Louisiana Patient's Compensation Fund. If we find that the proper statutory procedure was not followed, we must also determine whether dismissal of plaintiffs' claim against the Fund was the proper remedy.
The trial court granted summary judgment in favor of the Fund also reasoning that plaintiffs' claim was moot because, in settling their case against Abbeville General Hospital, the judgment dismissed plaintiffs' claim against the Fund. The plaintiffs executed a document which contained "hold harmless and indemnity" language in favor of the Hospital. The trial court, in granting defendant's motion for summary judgment, concluded *568 that the tortfeasor, Abbeville General Hospital, and the plaintiffs no longer had divergent interests, insofar as the language in the release merged their interest and, accordingly, extinguished plaintiffs' claim. Therefore, pursuant to plaintiffs' assignment of error, we must determine whether the trial court erred in granting summary judgment in favor of the Louisiana Patient's Compensation Fund, intervenor-appellee, on the basis that the plaintiffs' claim had been extinguished by confusion due to the contractual language in the receipt and release executed by plaintiffs in favor of the Hospital.

MOTION FOR SUMMARY JUDGMENT
In support of its motion for summary judgment, the Fund submitted two petitions for damages covering both claims of plaintiffs. Additionally, the Fund submitted the amendment to petitions for damages filed by plaintiffs April 8, 1991, which alleged that, although plaintiffs' claims against the Hospital have been settled by a partial settlement, they desire to pursue their claims against the Fund for excess damages.
An order was signed April 8, 1991, ordering a copy of the amended petition to be served on the Fund. The Fund also submitted, in support of its motion for summary judgment, its answer to the amended petition, filed July 18, 1991, wherein it generally denied the allegations and prayed for trial by jury in addition to averring that the plaintiffs' claims "do not fall within the coverage provided under Title 40 of the Louisiana Revised Statutes."
Additionally, the Fund submitted, in support of its motion for summary judgment, the judgment of dismissal signed by Judge Mouton on April 8, 1991, which dismissed the Hospital due to a compromise settlement wherein the plaintiffs reserved all of their rights against the Louisiana Patient's Compensation Fund.
The settlement "Receipt and Release," executed April 5, 1991, was also submitted in support of the Fund's motion for summary judgment, which revealed that a total of $110,000.00 was paid to plaintiffs on both claims. The release acknowledges that the Fund has taken the position that it has no liability because the plaintiffs' claims are not medical malpractice claims pursuant to LSA-R.S. 40:1299.41.
Finally, the Fund submitted the affidavit of Lynn Duszynski, wherein she declares that she is employed by the State of Louisiana and in her position of employment, has supervisory responsibilities for matters involving the Louisiana Patient's Compensation Fund. She continues by attesting that she knows by reason of her employment, "that prior to April 8, 1991, the Louisiana Patient's Compensation Fund Oversight Board was not served with a petition seeking approval of a settlement and/or demanding payment of damages from the Louisiana Patient's Compensation Fund nor an `Amendment to Petitions for Damages.'" The affidavit was sworn to on January 30, 1992.
In opposition to the Fund's motion for summary judgment, the plaintiffs submitted the affidavit of Rene J. Pfefferle, counsel for Abbeville General Hospital, with correspondence attached dated February 18, 1991, March 25, 1991, and April 8, 1991, from Pfefferle to Joel E. Gooch, counsel for the Louisiana Patient's Compensation Fund. The correspondence apprised the Fund's attorney of the background, developments and settlement status of the lawsuit beginning in June, 1988, in relation to both the Fund and the Hospital.
We note that the correspondence reveals the reason that the Hospital settled with the plaintiffs for $100,000.00 rather than for a higher amount, with the excess to be paid by the Fund. The Fund, in approximately January, 1991, appears to have changed its earlier position, which indicated that it planned to cooperate in the Hospital's attempts to settle with the plaintiffs. The Fund's position after January of 1991 contends that this lawsuit did not involve a medical malpractice claim; a proposition that had not previously been questioned. The Hospital, in an effort to settle without exposing itself to an excess judgment, in the event that the claim was ultimately determined not to be a malpractice claim, limited the release to the amount of $100,000.00. The correspondence of March 25, 1991, clearly informs the Fund of *569 the Hospital's attempt to settle while the correspondence of April 8, 1991, informs the Fund that the Hospital has, in fact, settled with the plaintiffs.

LAW AND DISCUSSION
"Appellate courts should review the granting of a summary judgment de novo under the same criteria governing the trial court's consideration of whether a summary judgment is appropriate. Schroeder v. Board of Supervisors, 591 So.2d 342, 345 (La.1991). Under La.Code Civ.Proc. art. 966, a motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show there is no genuine issue as to material fact and mover is entitled to judgment as a matter of law."
(Emphasis in original.)
Tugwell v. State Farm Ins. Co., 609 So.2d 195, 197 (La.1992).
In the case at bar, there is no genuine dispute of fact as to the procedure that the plaintiffs followed in settling with the Hospital and proceeding against the Fund for additional damages. The remaining issues are whether the plaintiffs followed appropriate procedure and, if not, whether the Fund is entitled to a judgment of dismissal, as a matter of law.

STATUTORY COMPLIANCE UNDER LSA-R.S. 40:1299
The Fund contends that it is entitled to the dismissal of plaintiffs' amended petition because the plaintiffs did not follow the procedure set forth in LSA-R.S. 40:1299.44(C).
LSA-R.S. 40:1299.44(C) states, as follows:
C. If the insurer of a health care provider or a self-insured health care provider has agreed to settle its liability on a claim against its insured and claimant is demanding an amount in excess thereof from the patient's compensation fund for a complete and final release, then the following procedure must be followed:
(1) A petition shall be filed by the claimant with the court in which the action is pending against the health care provider, if none is pending in the parish where plaintiff or defendant is domiciled seeking (a) approval of an agreed settlement, if any, and/or (b) demanding payment of damages from the patient's compensation fund.
(2) A copy of the petition shall be served on the board, the health care provider and his insurer, at least ten days before filing and shall contain sufficient information to inform the other parties about the nature of the claim and the additional amount demanded.
(3) The board and the insurer of the health care provider or the self-insured health care provider as the case may be, may agree to a settlement with the claimant from the patient's compensation fund, or the board and the insurer of the health care provider or the self-insured health care provider as the case may be, may file written objections to the payment of the amount demanded. The agreement or objections to the payment demanded shall be filed within twenty days after the petition is filed.
(4) As soon as practicable after the petition is filed in the court the judge shall fix the date on which the petition seeking approval of the agreed settlement and/or demanding payment of damages from the fund shall be heard, and shall notify the claimant, the insurer of the health care provider or the self-insured health care provider as the case may be, and the board thereof as provided by law.
(5) At the hearing the board, the claimant, and the insurer of the health care provider or the self-insured health care provider as the case may be, may introduce relevant evidence to enable the court to determine whether or not the petition should be approved if it is submitted on agreement without objections. If the board, the insurer of the health care provider or the self-insured health care provider as the case may be, and the claimant cannot agree on the amount, if any, to be paid out of the patient's compensation fund, then the court shall determine the amount of claimant's damages, if any, in excess of the amount already paid by the *570 insurer of the health care provider. The court shall determine the amount for which the fund is liable and render a finding and judgment accordingly. In approving a settlement or determining the amount, if any, to be paid from the patient's compensation fund, the court shall consider the liability of the health care provider as admitted and established where the insurer has paid its policy limits of one hundred thousand dollars, or where the self-insured health care provider has paid one hundred thousand dollars.
(6) Any settlement approved by the court shall not be appealed. Any judgment of the court fixing damages recoverable in any such contested proceeding shall be appealable pursuant to the rules governing appeals in any other civil court case tried by the court.
(7) For the benefit of both the insured and the patient's compensation fund, the insurer of the health provider shall exercise good faith and reasonable care both in evaluating the plaintiff's claim and in considering and acting upon settlement thereof. A self-insured health care provider shall, for the benefit of the patient's compensation fund, also exercise good faith and reasonable care both in evaluating the plaintiff's claim and in considering and acting upon settlement thereof.
(8) The parties may agree that any amounts due from the patient's compensation fund pursuant to R.S. 40:1299.44(B) be paid by annuity contract purchased by the patient's compensation fund for and on behalf of the claimant.
The essence of the Fund's contention is that the plaintiffs did not follow LSA-R.S. 40:1299.44(C)(2) when settling with the Hospital, insofar as plaintiffs' amended petition for excess damages was not served on them ten (10) days before filing. Instead, the amended petition was served on the same date the judgment releasing the Hospital was signed by the trial court and on the same date the plaintiffs' amended petition for excess damages was filed with the trial court.
Conversely, the plaintiffs contend that the applicable provision is LSA-R.S. 40:1299.42, which reads in pertinent part, as follows:
B. (1) The total amount recoverable for all malpractice claims for injuries to or death of a patient, exclusive of future medical care and related benefits as provided in R.S. 40:1299.43, shall not exceed five hundred thousand dollars plus interest and cost.
(2) A health care provider qualified under this Part is not liable for an amount in excess of one hundred thousand dollars plus interest thereon accruing after April 1, 1991, for all malpractice claims because of injuries to or death of any one patient.
(3)(a) Any amount due from a judgment or settlement or from a final award in an arbitration proceeding which is in excess of the total liability of all liable health care providers, as provided in Paragraph (2) of this Subsection, shall be paid from the patient's compensation fund pursuant to the provisions of R.S. 40:1299.44(C).
(b) The total amounts paid in accordance with Paragraphs (2) and (3) of this Subsection shall not exceed the limitation as provided in Paragraph (1) of this Subsection.
C. Except as provided in R.S. 40:1299.44(C), any advance payment made by the defendant health care provider or his insurer to or for the plaintiff, or any other person, may not be construed as an admission of liability for injuries or damages suffered by the plaintiff or anyone else in an action brought for medical malpractice.
D. (1) Evidence of an advance payment is not admissible until there is a final judgment in favor of the plaintiff, in which event the court shall reduce the judgment to the plaintiff to the extent of the advance payment.
(2) The advance payment shall inure to the exclusive benefit of the defendant or his insurer making the payment.
(3) In the event the advance payment exceeds the liability of the defendant or the insurer making it, the court shall order any adjustment necessary to equalize the amount which each defendant is obligated to pay, exclusive of costs.

*571 (4) In no case shall an advance payment in excess of an award be repayable by the person receiving it.
(5) In the event that a partial settlement is executed between the defendant and/or his insurer with a plaintiff for the sum of one hundred thousand dollars or less, written notice of such settlement shall be sent to the board. Such settlement shall not bar the continuation of the action against the patient's compensation fund for excess sums in which event the court shall reduce any judgment to the plaintiff in the amount of malpractice liability insurance in force as provided for in R.S. 40:1299.42(B)(2).
Specifically, plaintiffs contend that the procedure set forth in LSA-R.S. 40:1299.42(D)(5), which requires that "[i]n the event that a partial settlement is executed between the defendant and/or his insurer with a plaintiff for the sum of one hundred thousand dollars or less, written notice of such settlement shall be sent to the board ..." is the provision applicable when a settlement takes place which does not include the Fund.
LSA-R.S. 40:1299.42(D)(5) continues by stating:
Such settlement shall not bar the continuation of the action against the patient's compensation fund for excess sums in which event the court shall reduce any judgment to the plaintiff in the amount of malpractice liability insurance in force as provided for in R.S. 40:1299.42(B)(2).
We agree with plaintiffs' contention that LSA-R.S. 40:1299.42(D)(5) applies when a settlement occurs which does not include the Fund. Pursuant to LSA-R.S. 40:1299.42(B)(3)(a),[1] LSA-R.S. 40:1299.44(C)[2] comes into play when a judgment or settlement in excess of the total liability of all liable health care providers is due from the Fund. In the case at bar, the settlement was for $100,000.00 which did not include any excess amount due from the Fund. Therefore, plaintiffs correctly proceeded pursuant to LSA-R.S. 40:1299.42(D)(5) in executing a partial settlement which included only the Hospital and sending written notice of such settlement to the Fund.
The statute is silent as to the proper procedure a claimant is to follow after notifying the Fund, pursuant to LSA-R.S. 40:1299.42(D)(5), of an executed settlement. Although the issue before this court is res nova, it appears from the jurisprudence reviewed that, as a practical matter, the Fund is routinely brought into the lawsuit only after a settlement is executed between the health care provider and the claimant. See Rodriguez v. Louisiana Medical Mut. Ins., 618 So.2d 390 (La.1993); Prince v. Mattalino, 583 So.2d 541 (La.App. 3d Cir.1991); Savelle v. Heilbrunn, 552 So.2d 52 (La.App. 3d Cir.1989), writ denied, 556 So.2d 1267 (La. 1990); Moolekamp v. Rubin, 531 So.2d 1124 (La.App. 4th Cir.1988); and Knopfer v. La. Patient's Comp. Fund, 527 So.2d 326 (La. App. 4th Cir.1988).
Additionally, assuming arguendo that LSA-R.S. 40:1299.44(C) applies to a settlement which does not involve the Fund, the Fund cites no authority as to why plaintiffs' petition should be dismissed rather than allowing reasonable delays in order to make proper service for what essentially amounts to a declinatory exception of insufficiency of service of process. LSA-C.C.P. art. 925. We additionally note that the Fund filed an answer to plaintiffs' amended petition for excess damages, which has the effect of waiving any declinatory exceptions of insufficiency of service of process, even if couched in the form of a motion for summary judgment. LSA-C.C.P. art. 928. Therefore, even if the *572 trial court was correct in finding that the claimant did not follow the proper procedure in settling with the health care provider, pursuant to LSA-C.C.P. art. 932, the effect of sustaining a declinatory exception of insufficiency of service of process would be to give the claimant an opportunity to remove the grounds of any objections by amendment which, in this case, would entail service of the petition on the Fund ten (10) days before the filing of the petition.
Finally, if movant Fund's contentions were correct, i.e., that the plaintiffs should have followed the statutory procedures set forth in LSA-R.S. 40:1299.44(C), it is clear that the purpose of the statute is to afford all parties notice of the pending settlement. We note that the Fund intervened in the lawsuit between the plaintiffs and the Hospital on January 29, 1991, more than two (2) months prior to the settlement between the plaintiffs and the Hospital. The documents entered into evidence by plaintiffs in opposition to the Fund's motion for summary judgment and unrebutted by the Fund clearly reveal that the Fund was apprised of the settlement discussions occurring between the plaintiffs and the Hospital. At the very least, these documents raise a genuine issue of fact as to the notice which the Fund actually received.

EXTINGUISHMENT BY CONFUSION
The Fund, in arguing that the trial court was correct in granting summary judgment in its favor, contends that the claimants had contractually extinguished their claim against the Fund by contracting to fully defend, indemnify and hold Abbeville General Hospital harmless in the release executed. In other words, the Fund claims that "[w]hen the qualities of the obligee and obligor are united in the same person, the obligation is extinguished by confusion." LSA-C.C. art. 1903.
The trial court, in its reasons for judgment, stated the following as an additional reason for granting the Fund's motion for summary judgment:
"The court has considered this issue carefully and concludes that, in fact, the tortfeasor, Abbeville General Hospital, and the plaintiffs no longer have a divergent interest. The language in the release merges their interests and, accordingly, extinguishes the plaintiffs' claim."
A similar argument was urged by the Fund in its earlier exception of no cause of action. Therein, the Fund contended that insofar as there was no remaining defendant after the settlement between the claimant and the Hospital, there remained no cause of action against the Fund.
The trial court then determined that the language of LSA-R.S. 40:1299.42(D)(5),[3] mandated that a cause of action remained against the Fund regardless of the language used in the settlement or release of the health care provider.
The Fund's argument herein alleging confusion and the argument put forth in the prior exception of no cause of action are essentially the same, i.e., that due to the settlement with and release of the Hospital, there remains no viable defendant and, therefore, the obligation of the Fund is extinguished.
In denying the Fund's prior exception of no cause of action, the trial court stated:
"In order to grant, to maintain the exception, I think you would have to ignore completely Title 40, Section 1299.42 D 5, because that is not ambiguous. In the event that a partial settlement is executed between the defendant and or his insuror [sic] with the plaintiff for the sum of $100,000 or less. Written notice of such settlement shall be sent to the Board. Such settlement shall not bar the continuation of the action against the Patient's Compensation Fund for excess sums, in which event the Court shall reduce any judgment to the *573 plaintiff in the amount of malpractice liability insurance in force as provided for in R.S. 40:1299.42 B-2."
* * * * * *
"We noted that when the Fund is defending an action by the claimant for excess damages after settlement with the health care provider, the Fund is more in the nature of a statutory intervenor. It is a third person who has an interest in the proceedings between the claimant and the health care provider because any damages in excess of $100,000 are payable by the Fund."
The Fund took writs from the trial court's denial of its exception of no cause of action. This court, in denying writs, stated as follows:
"There is no error in the trial court's ruling. Settlement with and dismissal of a medical malpractice claim against a health care provider or its insurer, although with prejudice, does not preclude a claimant from proceeding against the Louisiana Patients Compensation Fund for an amount in excess of $100,000, so long as the statutory scheme and procedural requirements of La.R.S. 40:1299.44 are otherwise complied with."
In the case at bar, we agree with our earlier ruling on the writ denial of the Fund's exception of no cause of action and find that the plaintiffs' settlement and release of the Hospital did not have the effect of uniting or confusing the obligee and obligor and thereby extinguishing the obligation. We note that the release executed between the plaintiffs and the Hospital clearly reserves their right against the Fund. More importantly, LSA-R.S. 40:1299.42(D)(5) makes clear that a settlement between the claimants and the health care provider does not result in confusion and is not a bar to the continuation of the claimants' action against the Fund, regardless of the language used in the settlement document. As such, we find no merit in the Fund's contention that due to the language in the release agreeing to indemnify and hold the Hospital harmless, the parties have merged and there remains no obligation to be satisfied by the Fund.

CONCLUSION
Based on the foregoing, the judgment of the trial court, granting summary judgment in favor of the Louisiana Patient's Compensation Fund and against plaintiffs-appellants, Marie Louise Hebert and her husband, Elie Menard, is hereby reversed and remanded for further proceedings consistent with this opinion. Costs of this appeal and at trial to be paid by intervenor-appellee, Louisiana Patient's Compensation Fund.
REVERSED AND REMANDED.
DOMENGEAUX, C.J., concurs in the result reached. I find the LPCF statute ambiguous as to the proper procedure for settling.
NOTES
[1] LSA-R.S. 40:1299.42(B)(3)(a) states:

(3)(a) Any amount due from a judgment or settlement or from a final award in an arbitration proceeding which is in excess of the total liability of all liable health care providers, as provided in Paragraph (2) of this Subsection, shall be paid from the patient's compensation fund pursuant to the provisions of R.S. 40:1299.44(C).
[2] LSA-R.S. 40:1299.44(C) states:

C. If the insurer of a health care provider or a self-insured health care provider has agreed to settle its liability on a claim against its insured and claimant is demanding an amount in excess thereof from the patient's compensation fund for a complete and final release, then the following procedure must be followed:
* * * * * *
[3] LSA-R.S. 40:1299.42(D)(5) states:

(5) In the event that a partial settlement is executed between the defendant and/or his insurer with a plaintiff for the sum of one hundred thousand dollars or less, written notice of such settlement shall be sent to the board. Such settlement shall not bar the continuation of the action against the patient's compensation fund for excess sums in which event the court shall reduce any judgment to the plaintiff in the amount of malpractice liability insurance in force as provided for in R.S. 40:1299.42(B)(2).