J2GOTHARD, Judge.
This is an appeal of a trial court judgment which granted an exception of no cause of action and dismissed plaintiffs suit. For the following reasons, we reverse and remand.
FACTS
On December 11,1981, plaintiff, Ferdinand J. Horil, Jr., filed suit in the Twenty-Fourth Judicial District Court for the Parish of Jefferson, State of Louisiana, against David Scheinhorn, M.D., Gerald Broussard, M.D., Ochsner Clinic and the Alton Ochsner Medical Foundation Hospital Division, for damages suffered as a result of their negligent medical diagnosis and treatment of plaintiff. Plaintiff voluntarily dismissed the two individual doctors, and after settling with Ochs-ner Clinic and Ochsner Hospital (hereafter “original defendants”) for |3$100,000.00, on October 10, 1985, plaintiff filed a motion and order to dismiss with prejudice, “reserving his rights to proceed further against the Louisiana Patient’s Compensation Fund for any further claims which he may have under La.R.S. 40:1299.41 et seq. and particularly sections 1299.44(C)(4) and 1299.44(C)(5) including but not limited to claims for costs of court and interest at the legal rate.”
On April 16, 1992, plaintiff filed a first supplemental and amending petition, naming as a defendant the Louisiana Patient Compensation Fund (hereafter “the Fund”). On June 23, 1992, the Fund filed a motion to dismiss on grounds of abandonment, which was denied on January 15,1993. On July 23, 1993, we refused writs taken by the Fund (#93-C-578), holding:
On the showing made we find no error in the judgment of the trial court; although other principles of law may be involved, we find LSA-C.C.P. art. 561 relied upon by relator is not applicable under the terms of LSA-R.S. 40:1299.44, the statute involved herein, and find no abandonment under the latter statute.
On October 14, 1993, the Fund filed a motion for summary judgment, which it apparently withdrew prior to a hearing on the matter. Thereafter, on April 4, 1994, the Fund filed an exception of no cause of action. On August 17, 1994, the trial court rendered judgment, granting the Fund’s exception of no cause of action and dismissing suit at plaintiffs costs. Plaintiff appeals.
ANALYSIS
The peremptory exception of no cause of action is designed to test the legal sufficiency of the petition by determining whether plaintiff is afforded a remedy in law based on the facts alleged in the pleading. Everything on Wheels Subaru, Inc. v. Subaru South Inc., 616 So.2d 1234 (La.1993); Pelican Publishing Company v. Wilson, 626 So.2d 721 (La.App. 5 Cir.1993). No evidence may be introduced to support or controvert the objection that the petition fails to state a cause of action. La.Code Civ.Proc. art. 931; Pelican, supra at 723. In deciding the exception, the court must accept the well-pleaded allegations of fact as true. Id. at 723. The issue at trial is whether, on the face of *639 the petition, plaintiff is legally entitled to the relief sought. Id. at 723.
In support of its exception of no cause of action, the Fund contends that it is entitled to a dismissal of plaintiffs amended petition because the plaintiff did not follow the procedure set forth in LSA-R.S. 40:1299.44(0).
LSA-R.S. 40:1299.44(0) provides:
C. If the insurer of a health care provider or a self-insured health care provider has agreed to settle its liability on a claim against its insured and claimant is demanding an amount in excess thereof from the patient’s compensation fund for a complete and final release, [emphasis ours] then the following procedure must be followed:
(1) A petition shall be filed by the claimant with the court in which the action is pending against the health care provider, if none is pending in the parish where plaintiff or defendant is domiciled seeking (a) approval of an agreed settlement, if any, and/or (b) demanding payment of damages from the patient’s compensation fund.
(2) A copy of the petition shall be served on the board, the health care provider and his insurer, at least ten days before filing and shall contain sufficient information to inform the other parties about the nature of the claim and the additional amount demanded.
(3) The board and the insurer of the health care provider or the self-insured health care provider as the ease may be, may agree to a settlement with the claimant from the patient’s compensation fund, or the board and the insurer of the health care provider or the Igself-insured health care provider as the case may be, may file written objections to the payment of the amount demanded. The agreement or objections to the payment demanded shall be filed within twenty days after the petition is filed.
(4) As soon as practicable after the petition is filed in the court the judge shall fix the date on which the petition seeking approval of the agreed settlement and/or demanding payment of damages from the fund shall be heard, and shall notify the claimant, the insurer of the health care provider or the self-insured health care provider as the case may be, and the board thereof as provided by law.
(5) At the hearing the board, the claimant, and the insurer of the health care provider or the self-insured health care provider as the case may be, may introduce relevant evidence to enable the court to determine whether or not the petition should be approved if it is submitted on agreement without objections. If the board, the insurer of the health care provider or the self-insured health care provider as the case may be, and the claimant cannot agree on the amount, if any, to be paid out of the patient’s compensation fund, then the court shall determine the amount of claimant’s damages, if any, in excess of the amount already paid by the insurer of the health care provider. The court shall determine the amount for which the fund is liable and render a finding and judgment accordingly. In approving a settlement or determining the amount, if any, to be paid from the patient’s compensation fund, the court shall consider the liability of the health care provider as admitted and established where the insurer has paid its policy limits of one hundred thousand dollars, or where the self-insured health care provider has paid one hundred thousand dollars.
(6) Any settlement approved by the court shall not be appealed. Any judgment of the court fixing damages recoverable in any such contested proceeding shall be appealable pursuant to the rules governing appeals in any other civil court case tried by the court.
(7) For the benefit of both the insured and the patient’s compensation fund, the insurer of the health provider shall exercise good faith and reasonable care both in evaluating the plaintiffs claim and in considering and acting upon settlement thereof. A |6self-insured health care provider shall, for the benefit of the patient’s compensation fund, also exercise good faith and reasonable care both in evaluating the plaintiffs claim and in considering and acting upon settlement thereof.
*640 (8) The parties may agree that any amounts due from the patient’s compensation fund pursuant to R.S. 40:1299.44(B) be paid by annuity contract purchased by the patient’s compensation fund for and on behalf of the claimant.[1]
Our review of this statute reveals that when a plaintiff and a health care provider agree to settle plaintiffs claim and plaintiff is seeking additional damages from the Fund, in order to receive a complete and final release, the plaintiff must file the requisite petition. A reading of R.S. 40:1299.42(B)(3)(a)[2] reveals that the Medical Malpractice Act contemplates, and provides for, a situation where the plaintiff settles his claims against the defendant health care provider for more than its total liability. In that scenario, R.S. 40:1299.44(0) is triggered.
In the matter before us, plaintiff did not settle with the defendants for more than their total liability, nor did plaintiff seek a complete and final release. In the October 10,1985 motion and order to dismiss, plaintiff specifically reserved his rights to seek additional damages from the Fund. Clearly, the purpose of sections (1) and (2) of R.S. 1299.44(C) is to put the Fund on notice that a 17settlement has been reached and to give the Fund time to object. However, the Fund may not intervene and object to a settlement between the plaintiff and a health care provider which is not in excess of $100,000.00.[3] Therefore, R.S. 1299.44(C) does not apply to the situation before us today, where plaintiff settled with the original defendants for $100,-000.00.
Instead, we find that LSA-R.S. 40:1299.42(D)(5), applies. It provides:
(5) In the event that a partial settlement is executed between the defendant and/or his insurer with a plaintiff for the sum of one hundred thousand dollars or less, written notice of such settlement shall be sent to the board. Such settlement shall not bar the continuation of the action against the patient’s compensation fund for excess sums in which event the court shall reduce any judgment to the plaintiff in the amount of malpractice liability insurance in force as provided for in R.S. 40:1299.42(B)(2).
As the first sentence of subsection (D)(5) states, plaintiff must have given written notice to the Fund when he settled with the original defendants for $100,000.00. However, subsection (D)(5) does not give a time period in which this notice must be made. Moreover, the second sentence of subsection (D)(5) clearly gives plaintiff the right to proceed against the Fund after settling with the original defendants. We find that plaintiffs April 16,1992 first supplemental and amending petition satisfies the notice requirement of subsection (D)(5).
On appeal, the Fund claims that it did not receive notice from the plaintiff of his settlement with the original defendants until plaintiff served the Fund with his first supplemental and amending petition. The Fund argues that this large gap in the time plaintiff settled with the original defendants until he notified the Fund |8of the settlement unfairly prejudices the Fund by subjecting it to seven years of judicial interest and placing it at a severe disadvantage in conducting discovery on the issue of damages.
While we agree that this anomaly in the law allows for this apparently uncontemplat-ed situation, we find that the provisions of R.S. 40:1299.44(0 do not apply to the situation before us. Moreover, the suit was dismissed on an exception of no cause of action. After reviewing the record, statutes and jurisprudence, we find that plaintiff is afforded a remedy in law based on the facts alleged in *641 the pleading, and that therefore, plaintiff has stated a cause of action against the Fund.
A similar factual situation occurred in the recent case of Hebert v. Abbeville General Hospital, 625 So.2d 566, 571-72 (La.App. 3 Cir.1993), writ denied, 639 So.2d 1177 (La. 1994), in which the Third Circuit held
that LSA-R.S. 40:1299.42(D)(5) applies when a settlement occurs which does not include the Fund. Pursuant to LSA-R.S. 40:1299.42(B)(3)(a), LSA-R.S. 40:1299.44(0) comes into play when a judgment or settlement in excess of the total liability of all hable health care providers is due from the Fund. In the case at bar, the settlement was for $100,000.00 which did not include any excess amount due from the Fund. Therefore, plaintiffs correctly proceeded pursuant to LSA-R.S. 40:1299.42(D)(5) in executing a partial settlement which included only the Hospital and sending written notice of such settlement to the Fund.
The statute is silent as to the proper procedure a claimant is to follow after notifying the Fund, pursuant to LSA-R.S. 40:1299.42(D)(5), of an executed settlement. Although the issue before this court is res nova, it appears from the jurisprudence reviewed that, as a practical matter, the Fund is routinely brought into the lawsuit only after a settlement is executed between the health care provider and the claimant. See Rodriguez v. Louisiana Medical Mut. Ins., 618 So.2d 390 (La.1993); Prince v. Mattalino, 583 So.2d 541 |9(La.App. 3d Cir.1991); Savelle v. Heilbrunn, 552 So.2d 52 (La.App. 3d Cir. 1989), writ denied, 556 So.2d 1267 (La.1990); Moolekamp v. Rubin, 531 So.2d 1124 (La.App. 4th Cir.1988); and Knopfer v. La. Patient’s Comp. Fund, 527 So.2d 326 (La.App. 4th Cir.1988).
Additionally, assuming arguendo that LSA-R.S. 40:1299.44(0 applies to a settlement which does not involve the Fund, the Fund cites no authority as to why plaintiffs’ petition should be dismissed rather than allowing reasonable delays in order to make proper service for what essentially amounts to a declinatory exception of insufficiency of service of process. LSA-C.C.P. art. 925_ Therefore, even if the trial court was correct in finding that the claimant did not follow the proper procedure in settling with the health care provider, pursuant to LSA-C.C.P. art. 932, the effect of sustaining a declinatory exception of insufficiency of service of process would be to give the claimant an opportunity to remove the grounds of any objections by amendment which, in this ease, would entail service of the petition on the Fund ten (10) days before the filing of the petition, [footnotes omitted]
On appeal, the Fund also contends that the trial court was correct in granting their exception of no cause of action because plaintiff contractually extinguished his claim against the Fund by contracting to fully defend, indemnify and hold the original defendants harmless in the release he executed. In other words, the Fund claims that “[w]hen the qualities of the obligee and obligor are united in the same person, the obligation is extinguished by confusion.” LSA-C.C. art. 1903.
We agree with the reasoning of the Hebert court, which, when faced with the identical situation, held
In the case at bar, we ... find that the plaintiffs’ settlement and release of the Hospital did not have the effect of uniting or confusing the obligee and obligor and thereby extinguishing the obligation. We note that the release executed between the plaintiffs and the Hospital clearly reserves their right against the Fund. More importantly, LSA-R.S. 40:1299.42(D)(5) makes | ipdear that a settlement between the claimants and the health care provider does not result in confusion and is not a bar to the continuation of the claimants’ action against the Fund, regardless of the language used in the settlement document. As such, we find no merit in the Fund’s contention that due to the language in the release agreeing to indemnify and hold the Hospital harmless, the parties have merged and there remains no obligation to be satisfied by the Fund.
Hebert, supra at 573.
Based on the foregoing, the judgment of the trial court, granting an exception of no *642 cause of action in favor of the Louisiana Patient’s Compensation Fund and against plaintiff, dismissing the suit, is hereby reversed. This matter is remanded to the trial court for further proceedings consistent with this opinion. Costs of this appeal are assessed against the Louisiana Patient’s Compensation Fund.
REVERSED AND REMANDED.

. While some changes to the law have been made since the plaintiff’s October 10, 1985 settlement, the substance of the law remains the same.

. R.S. 40:1299.42(B)(3)(a), provides:
Any amount due from a judgment or settlement or from a final award in an arbitration proceeding which is in excess of the total liability of all liable health care providers, as provided in Paragraph (2) of this Subsection, shall be paid from the patient’s compensation fund pursuant to the provisions of R.S. 40:1299.44(C). [emphasis ours]

.See Butler v. Flint Goodrich Hosp. of Dillard University, 607 So.2d 517, 519 (La.1992), cert. denied, - Ú.S. -, 113 S.Ct. 2338, 124 L.Ed.2d 249 (1993); Koslowski v. Sanchez, 576 So.2d 470 (La.1991), and the cases cited therein.