663 So.2d 697 (1995)
Ferdinand J. HORIL, Jr.
v.
David SCHEINHORN, M.D., et al.
No. 95-C-0967.
Supreme Court of Louisiana.
November 27, 1995.
Rehearing Denied January 12, 1996.
Gregory Carl Weiss, Stephen Robert Barry, Weiss & Eason, New Orleans, for Applicant.
John Joseph Jackson, III, Jackson & Stovall, Metairie, for Respondent.
Stewart Earl Niles, Jr., Patricia Anne Bethancourt, New Orleans, for Risk Management Division of Administration, Amicus Curiae.
*698 HIGHTOWER, Justice Pro Tem.[*]
After the Fifth Circuit Court of Appeal reversed a district court dismissal of this medical malpractice suit, the Louisiana Patient's Compensation Fund ("the Fund") sought a writ of review. Having granted the application, we hold that a claimant expecting excess recovery from the Fund must closely follow La.R.S. 40:1299.44(C) when requesting court approval of a settlement. Finding that the intermediate court misapplied the pertinent statutory provisions, we reverse the court of appeal decision and reinstate the trial court judgment.

FACTS AND PROCEDURAL HISTORY
On December 11, 1981, Ferdinand J. Horil, Jr., instituted a malpractice action against David Scheinhorn, M.D., Gerald Broussard, M.D., Ochsner Clinic, and the Alton Ochsner Medical Foundation. His petition sought damages based on an alleged negligent misdiagnosis and failure to warn of the dangerous nature of prescribed treatment.
Approximately four years later on October 10, 1985, acknowledging that he had no cause of action against the named physicians, Horil voluntarily dismissed these two parties with prejudice. At his request on that same date, the trial court also approved plaintiff's $100,000 settlement and dismissal with prejudice as to Ochsner Clinic and the Alton Ochsner Medical Foundation, while "reserving unto plaintiff his right to proceed further against [the Fund] under ... La.R.S. 40:1299.41, et seq., and particularly under sections 1299.44(C)(4) and 1299.44(C)(5) of said statute for any further claims which plaintiff may have herein...." Yet, the Fund (or its oversight board) never received service of the motions or orders dismissing the original defendants.
Thereafter, for almost seven years, no further filings or other court activity appeared of record. Still, on April 16, 1992, Horil filed a first supplemental and amending petition seeking to add the Fund as a party defendant. Noting that he had previously settled his claims with the original defendants who had been qualified health care providers, Horil now professed a right to proceed directly against the Fund. That statutory entity initially countered with a motion to dismiss on grounds of abandonment, La.C.C.P. art. 561, which both the trial court and the court of appeal eventually rejected.
Subsequently, the Fund asserted in a peremptory exception that, after failing to adhere to the requirements of La.R.S. 40:1299.44(C), plaintiffs[1] had no cause of action. The trial court agreed and dismissed the claim. The fifth circuit reversed and remanded, concluding that La.R.S. 40:1299.42(D)(5) controlled the matter. Horil v. Scheinhorn, 94-940 (La.App. 5th Cir. 03/15/95), 653 So.2d 637. We then granted the abovementioned writ application to determine if La.R.S. 40:1299.44(C) required plaintiff to serve the Fund contemporaneously with his petition for approval of the settlement with the health care providers. Horil v. Scheinhorn, 95-0967 (La. 06/23/95), 656 So.2d 1024.

DISCUSSION
The court of appeal, relying on La.R.S. 40:1299.42(D)(5) and Hebert v. Abbeville General Hospital, 625 So.2d 566 (La.App. 3d Cir.1993), writ denied, 93-2753 (La. 07/01/94), 639 So.2d 1177, concluded that when a medical malpractice plaintiff and a health care provider settle a claim for $100,000 or less, written notice of the arrangement may be delivered to the Fund in any form and at any time thereafter. Based on that premise, Horil's 1992 supplemental and amending petition, filed and served nearly seven years after the dismissal of the original defendants, sufficed to press a claim for excess damages against the Fund.
In resolving the issues presented, we are confronted with the detailed provisions of *699 La.R.S. 40:1299.44(C), along with the more general statements contained in La.R.S. 40:1299.42(D)(5) and relied upon by the intermediate court. Of course, statutes upon the same subject must be read in reference to each other and language susceptible of different meanings must be construed in such a manner as to best conform to the purpose of the law. La.C.C. arts. 10, 13. In instances of a conflict, the statute specifically directed to the matter at issue must prevail as an exception to the statute more general in character. First Nat. Bank of Boston v. Beckwith Machinery Co., 94-2065 (La. 02/20/95), 650 So.2d 1148; Hayden v. Richland Parish School Board, 554 So.2d 164 (La.App. 2d Cir.1989), writ denied, 559 So.2d 124 (La.1990).
The respective amounts recoverable by a plaintiff under the Medical Malpractice Act, La.R.S. 40:1299.41, et seq., are broadly delineated in Section 1299.42, entitled "Limitation of recovery." Within that section, La. R.S. 40:1299.42(D)(5) provides:
In the event that a partial settlement is executed between the defendant and/or his insurer with a plaintiff for the sum of one hundred thousand dollars or less, written notice of such settlement shall be sent to the board. Such settlement shall not bar the continuation of the action against the patient's compensation fund for excess sums in which event the court shall reduce any judgment to the plaintiff in the amount of malpractice liability insurance in force as provided for in R.S. 40:1299.42(B)(2).
Consistent with the above noted title, this particular subsection directs that the Fund receive notice of, and appropriate credit for, any partial settlement reached between the health care provider and the malpractice claimant. Thomas v. Ins. Corp. of America, 93-1856 (La. 02/28/94), 633 So.2d 136. However, when, as here, a health care provider agrees to settle its entire statutory liability and the claimant intends to pursue additional sums from the Fund, La.R.S. 40:1299.44(C)[2] *700 articulates the requisite procedure. See generally Ewing v. Aubert, 566 So.2d 616 (La.1990); Stuka v. Fleming, 561 So.2d 1371 (La.1990), cert. denied, 498 U.S. 982, 111 S.Ct. 513, 112 L.Ed.2d 525 (1990); Williams v. Kushner, 449 So.2d 455 (La.1984). This last-mentioned provision is incorporated within the section titled "Patient's compensation fund."
Recently, in Russo v. Vasquez, 94-2407, pp. 5, 6 (La. 01/17/95), 648 So.2d 879, 882, we outlined the purpose and requirements of La.R.S. 40:1299.44(C). We noted there that, where a provider's insurer agrees to settle a claim against its insured but the claimant demands, from the Fund, an amount exceeding the $100,000 paid by the insurer, this statute requires the claimant to utilize a specific procedure. First, the claimant must file a petition seeking approval of the settlement and demanding additional damages from the Fund. La.R.S. 40:1299.44(C)(1). The Fund's oversight board must be served with a copy of that petition at least ten days prior to the filing, La.R.S. 40:1299.44(C)(2), and may within twenty days agree or object to the amount demanded, La.R.S. 40:1299.44(C)(3). Then, if the oversight board, the claimant, and the insurer of the health care provider cannot agree on the amount to be paid by the Fund, the court must conduct a trial to determine the amount of the victim's damages exceeding the sum already paid by the health care provider or his insurer. La.R.S. 40:1299.44(C)(5). Where the insurer has paid its policy limits of $100,000, the court shall consider the liability of the provider as admitted and established for purposes of approving a settlement or determining the amount, if any, to be paid by the Fund. La.R.S. 40:1299.44(C)(5).
In the case sub judice, by viewing Horil's 1985 settlement as not then implicating the Fund and as being narrowly controlled by La.R.S. 40:1299.42(D)(5), the court of appeal disregarded the special requirements of La. R.S. 40:1299.44(C).[3] In instances where the claimant expects to ultimately recover from the Fund despite his settlement of the provider's liability, this latter statutory provision mandates the procedure that the claimant must closely follow. In the present matter, at the time of seeking court approval of his settlement with the named defendants, Horil obviously sought to reserve his right to further recovery from the Fund. In such circumstances, La.R.S. 40:1299.42(D)(5) does not license a separate settlement vehicle. Instead, it is clear that the specifics of La. R.S. 40:1299.44(C) govern.
Plaintiffs argue that, inasmuch as the Fund may not contest a health care provider's liability when there has been a settlement of exactly $100,000, see Russo, supra, the sole purpose of heeding La.R.S. 40:1299.44(C) would be to inform the Fund about the compromise. Thus, they contend, such information need not be delivered in any particular form or at any particular time. We decline to limit the purpose of La.R.S. 40:1299.44(C), however, to mere notice. Much more than simply conveying information, this provision unmistakably requires that any demands for additional recovery be forthrightly asserted by petition. Also, as previously indicated, other aspects of La.R.S. 40:1299.44(C) go well beyond ordinary notice, e.g., procedures are specified for determining damages, the potential is established for participation by the oversight board and the *701 health care provider, and rules governing appeals are set forth.
Absent careful compliance with La.R.S. 40:1299.44(C), the Fund stands to be faced with a situation similar to the instant scenario where, despite the passage of several years, no formal demand has been made for additional sums. Understandably, in these circumstances, and even if possessing informal knowledge of a settlement, the oversight board will eventually assume the matter had been resolved to the plaintiff's satisfaction and that no further demand is forthcoming. As persuasively urged by relator, there is an indispensable need for fiscal stability within the Fund. To protect its solvency, the Fund must possess accurate information concerning the amount and number of claims it may be called upon to pay in any given period.
Plaintiffs and the court of appeal also rely on "common practice" in defense to Horil's failure to comply with La.R.S. 40:1299.44(C) in October 1985, when he sought approval of his settlement with the original defendants. Several cases are cited in an effort to illustrate that the Fund is routinely brought into lawsuits only after a settlement between the claimant and the health care provider has been executed, viz., Rodriguez v. Louisiana Medical Mut. Ins., 618 So.2d 390 (La.1993); Prince v. Mattalino, 583 So.2d 541 (La.App. 3d Cir.1991); Savelle v. Heilbrunn, 552 So.2d 52 (La.App. 3d Cir.1989), writ denied, 556 So.2d 1267 (La.1990); Moolekamp v. Rubin, 531 So.2d 1124 (La.App. 4th Cir.1988); Knopfer v. La. Patient's Comp. Fund, 527 So.2d 326 (La.App. 4th Cir.1988).
First of all, custom obviously does not abrogate legislation. La.C.C. art. 3. Beyond that, our review discloses that none of the indicated decisions directly address what procedure a claimant must follow in making a post-settlement demand against the Fund, or discuss in detail the method utilized to bring the Fund into any of these proceedings. Indeed, in Prince, supra, the plaintiff seemingly followed the procedure contemplated by La.R.S. 40:1299.44(C). In its recitation of facts, the court notes:
Plaintiffs accepted the [tendered $100,000] settlement [from one of the qualified health care providers] and reserved their rights to proceed against the Louisiana Patient's Compensation Fund. In a pleading styled "Joint Petition for Court Approval of the Settlement of a Medical Malpractice Claim and Claimant's Demand for Payment of Damages from the Patient's Compensation Fund" plaintiffs averred that they and the Commissioner of Insurance [presently the Oversight Board] were unable to agree on the amount of excess damages to be paid out of the Louisiana Patient's Compensation Fund, and, accordingly, sought judicial determination of such amount.
583 So.2d at 542. See also Stuka, supra; Doe v. Doe, 94-2284 (La.App. 1st Cir. 06/23/95), 657 So.2d 628; Dodson v. Community Blood Center of La., Inc., 633 So.2d 252 (La.App. 1st Cir.1993), writs denied, 93-3158, 93-3174 (La. 03/18/94), 634 So.2d 850, 851 (all describing procedural compliances with the provisions of La.R.S. 40:1299.44(C)).
While it is true that the claimant and the health care provider (or his insurer) will normally agree on the terms of the compromise prior to the Fund's involvement, when the settlement is submitted to the court for approval, the Fund must at that time be afforded notice and the opportunity to participate, if the claimant expects to seek excess sums. Here, despite, in October 1985, expressly reserving his right to proceed against the Fund specifically under portions of La.R.S. 40:1299.44(C), Horil's glaring noncompliance with the procedures enunciated within that subsection precludes the instant claim.[4] Thus, because the amended petition fails to disclose that a cause of action now exists against the Fund, the trial court correctly granted relator's exception. See Everything *702 on Wheels Subaru, Inc. v. Subaru South, 616 So.2d 1234 (La.1993).

CONCLUSION
According to the provisions of La.R.S. 40:1299.44(C), when a plaintiff seeks court approval of his settlement with a health care provider, he must, at that time, assert any excess demands against the Patient's Compensation Fund. Here, Horil clearly did not comply with that mandated procedure, and the subsequent amending petition failed to state a cause of action against the Fund. Thus, the judgment of the court of appeal is reversed and the district court dismissal reinstated. All costs are assessed to plaintiffs.
CALOGERO, C.J., concurs and assigns reasons.
WATSON, J., concurs and assigns reasons.
CALOGERO, Chief Justice, concurring.
I respectfully concur in the judgment reversing the court of appeal and reinstating the district court's judgment dismissing plaintiff's claim. I agree with the essential holding, applying La.R.S. 40:1299.44(C) and dismissing plaintiff's claim against the Louisiana Patient's Compensation Fund (the "Fund") because it was filed almost seven years after the initial settlement with the health care providers. However, I have reservations about some of the other ideas expressed in the majority's opinion.
First, I have a problem with the majority's concern "for fiscal stability within the Fund." The state does not appropriate money for the Fund. If the Fund becomes insolvent, the state is not responsible for the Fund's obligations. Instead the claimants suffer the loss or delay in receipt of payment.
Second, I am not willing to state that a claimant's failure to strictly adhere to the rules set forth in R.S. 40:1299.44(C) automatically costs him his right to pursue the Fund. I would leave for another day the case in which a claimant's tardiness in acting spans a very brief period as opposed to seven years as in this case.
WATSON, Justice, concurring.
Since the Patient's Compensation Fund had actual notice of Horil's settlement with the health care providers, I concur in the result solely because the seven-year delay in impleading the Fund was excessive.
NOTES
[*] Judge Lemmie O. Hightower of the Court of Appeal, Second Circuit, sitting by assignment in the vacancy created by the resignation of Dennis, J.

Lemmon, J. not on panel. Rule IV, Part 2, § 3.
[1] After Horil's death, his family members substituted themselves as plaintiffs in a petition dated September 27, 1993.
[2] La.R.S. 40:1299.44(C) provides, in pertinent part:

C. If the insurer of a health care provider or a self-insured health care provider has agreed to settle its liability on a claim against its insured and claimant is demanding an amount in excess thereof from the patient's compensation fund for a complete and final release, then the following procedure must be followed:
(1) A petition shall be filed by the claimant with the court in which the action is pending against the health care provider, if none is pending in the parish where plaintiff or defendant is domiciled seeking (a) approval of an agreed settlement, if any, and/or (b) demanding payment of damages from the patient's compensation fund.
(2) A copy of the petition shall be served on the board, the health care provider and his insurer, at least ten days before filing and shall contain sufficient information to inform the other parties about the nature of the claim and the additional amount demanded.
(3) The board and the insurer of the health care provider or the self-insured health care provider as the case may be, may agree to a settlement with the claimant from the patient's compensation fund, or the board and the insurer of the health care provider or the self-insured health care provider as the case may be, may file written objections to the payment of the amount demanded. The agreement or objections to the payment demanded shall be filed within twenty days after the petition is filed.
(4) As soon as practicable after the petition is filed in the court the judge shall fix the date on which the petition seeking approval of the agreed settlement and/or demanding payment of damages from the fund shall be heard, and shall notify the claimant, the insurer of the health care provider or the self-insured health care provider as the case may be, and the board thereof as provided by law.
(5) At the hearing the board, the claimant, and the insurer of the health care provider or the self-insured health care provider as the case may be, may introduce relevant evidence to enable the court to determine whether or not the petition should be approved if it is submitted on agreement without objections. If the board, the insurer of the health care provider or the self-insured health care provider as the case may be, and the claimant cannot agree on the amount, if any, to be paid out of the patient's compensation fund, then the court shall determine the amount of claimant's damages, if any, in excess of the amount already paid by the insurer of the health care provider. The court shall determine the amount for which the fund is liable and render a finding and judgment accordingly. In approving a settlement or determining the amount, if any, to be paid from the patient's compensation fund, the court shall consider the liability of the health care provider as admitted and established where the insurer has paid its policy limits of one hundred thousand dollars, or where the self-insured health care provider has paid one hundred thousand dollars.
(6) Any settlement approved by the court shall not be appealed. Any judgment of the court fixing damages recoverable in any such contested proceeding shall be appealable pursuant to the rules governing appeals in any other civil court case tried by the court.
(7) For the benefit of both the insured and the patient's compensation fund, the insurer of the health provider shall exercise good faith and reasonable care both in evaluating the plaintiff's claim and in considering and acting upon settlement thereof. A self-insured health care provider shall, for the benefit of the patient's compensation fund, also exercise good faith and reasonable care both in evaluating the plaintiff's claim and in considering and acting upon settlement thereof.
[3] As previously noted, in reaching its conclusion, the court of appeal relied heavily upon Hebert, supra. That opinion, after determining that La. R.S. 40:1299.42(D)(5) applied in circumstances somewhat similar to the case sub judice, suggested that the provision "is silent as to the proper procedure a claimant is to follow after notifying the Fund ... of an executed settlement." Such a discernment, however, overlooks that the proper procedure is indeed specifically crafted within the Medical Malpractice Act through La.R.S. 40:1299.44(C).
[4] In dicta, the Hebert court suggested that failure to comply with these procedures should result, at most, in a continuance. Although that approach understandably would be attractive where, as in Hebert, service occurred only a few days late, it nonetheless offends the statutory mandate and produces a preposterous result when, as here, the Fund receives no formal demand until almost seven years later. In the matter at hand, the trial court actually approved the settlement before proceedings began against the Fund.