# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 03-142

SUSAN DEANO, JOHN L. DEANO & MARK GUILBEAU

VERSUS

VIDYADHAR AKKARAJU, M.D., ET AL.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2002-2726
HONORABLE EDWARD D. RUBIN, DISTRICT JUDGE

**********

## SYLVIA R. COOKS
## JUDGE

**********

Court composed of Sylvia R. Cooks, Oswald A. Decuir, and Marc T. Amy, Judges.

Amy, J., dissents and assigns written reasons.

**AFFIRMED.**

Michael Keith Prudhomme
Thomas Patrick LeBlanc
Lundy & Davis
Post Office Box 3010
Lake Charles, LA   70602
(337) 439-0707
COUNSEL FOR DEFENDANT/APPELLANT:
    Louisiana Patients' CompensationFund
    Vidyadhar Akkaraju, M.D.

**Edwin Byrne Edwards**
**Edwards Law Firm**
**Post Office Box 2970**
**Lafayette, LA   70502**
**(337) 237-6881**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
      **Susan Deano, John L. Deano, and Mark Guilbeau**


**W. Fox McKeithen**
**Secretary of State**
**3851 Essen Lane**
**Baton Rouge, LA   70809**
**(225) 922-1000**
**COUNSEL FOR DEFENDANT/APPELLEE:**
      **Louisiana Medical Mutual Ins. Co.**

**COOKS, Judge.**

Plaintiffs filed a petition for approval of a compromise settlement. The Louisiana Patient's Compensation Fund Oversight Board (PCF) filed a petition for declaratory judgment asserting the petition was not timely filed as required by the Medical Malpractice Act. The plaintiffs filed exceptions of *res judicata*, no cause of action, and no right of action in response. The trial court sustained the exceptions and dismissed the petition for declaratory judgment. The PCF appeals.

For the following reasons, we affirm the portion of the judgment sustaining the exception of no cause of action and the dismissal of the PCF's petition for declaratory judgment. Our ruling renders moot the remaining issues presented on appeal.

## FACTS AND PROCEDURAL HISTORY

On March 13, 2000, Mrs. Susan Deano, her husband, John Deano, and her son, Mark Guilbeau, filed a petition and a request for review by a medical review panel. The petition alleged Mrs. Deano received negligent medical care on March 18, 1997. Dr. Vidyadhar Akkaraju, Dr. Fabian Lugo, and Lafayette General Medical Center were named as defendants. A compromise settlement was reached between the plaintiffs and Dr. Akkaraju, along with his insurer, Louisiana Medical Mutual Insurance Company (LAMMICO). The "Receipt and Release of All Claims" is contained in the record and reflects, in exchange for a $100,000.00 payment by Dr. Akkaraju and his insurer, the Deanos agreed to dismiss any and all claims against the health care providers and their insurers, retaining the right to name Dr. Akkaraju as a nominal defendant for pursuit of an excess damages claim against the PCF. The document was signed on June 2, 2001. The record further contains a Motion for Voluntary Dismissal submitted to the PCF by the plaintiffs, requesting dismissal of "any and all claims, demands and causes of action" against Vidyadhar Akkaraju,

M.D., Fabian Lugo, M.D., and Lafayette General Medical Center. The motion also specifically reserved "plaintiffs' rights to proceed against the Louisiana Patients' Compensation Fund as to Vidyadhar Akkaraju, M.D." for excess damages. The motion is stamped as received on June 7, 2001. On the same date, a document styled "Judgment," essentially incorporating the language of the motion, was signed by Cheryl Jackson, Malpractice Insurance Director for the PCF.

Over eleven months later, on May 23, 2002, plaintiffs filed a "Petition for Court Approval of Settlement of Medical Malpractice Claim and Demand for Payment of Damages from Patient's Compensation Fund." In keeping with the settlement, the petition named Dr. Akkaraju and LAMMICO as nominal defendants, recited the $100,000.00 payment had been received from LAMMICO, and further sought the sum of $400,000.00 plus past and future medical care related benefits and expenses, legal interest and costs from the Louisiana Patient's Compensation Fund. The plaintiffs included a prayer for approval of the settlement of the plaintiffs' claims against Dr. Akkaraju and LAMMICO.

In a separate suit, the PCF filed a Petition for Declaratory Judgment on May 28, 2002. The petition set forth the relevant dates of the alleged malpractice, the settlement date, and the date Cheryl Jackson signed the "Judgment." The PCF noted La.R.S. 40:1299.44(C) requires court approval of all malpractice compromise settlements. It then apparently alleged, by operation of La.R.S. 40:1299.47, the plaintiffs had until September 20, 2001 to seek court approval of the settlement. La. R.S. 40:1299.47(A)(2)(a) states, in relevant part, "[t]he filing of the request for a review of a claim shall suspend the time within which suit must be instituted, in accordance with this Part, until ninety days following notification, by certified mail,

2

as provided in Subsection J of this Section, to the claimant or his attorney of the issuance of the opinion by the medical review panel. . ."   As noted, the "Judgment," purporting to dismiss the Deanos' claims before the Medical Review Panel, was signed by Cheryl Jackson on June 7, 2001.  Because plaintiffs' petition seeking court approval of the settlement was not filed until May 23, 2002, the PCF alleged "this matter is prescribed as a matter of law."

In response to the PCF's petition for declaratory judgment, the plaintiffs filed an "Exception of Res Judicata, No Right of Action, and No Cause of Action."  The plaintiffs argued the declaratory action was essentially an exception of prescription. With regard to the claim of *res judicata*, they assert:

> The PCF's right to argue prescription died with their insured's settlement for this claim for the full $100,000.00 policy limits, with the PCF's representative signing the Judgment.  Since this issue has been compromised, res judicata precludes litigation of prescription at this time.

The plaintiffs also allege the PCF has no right of action because following settlement with a qualified health care provider, the PCF functions as a statutory intervenor and cannot raise exceptions following payment of a settlement.  Finally, the plaintiffs asserted the PCF had no cause of action as it could not litigate what its insured admitted by way of settlement, *i.e.*, liability.

The PCF's Petition for Declaratory Judgment and plaintiffs' Petition for Court Approval of Settlement were eventually consolidated for trial.[1]  Following a hearing, the exceptions were sustained by the trial court and the petition for declaratory judgment was dismissed.  The PCF appeals.

---

[1]For the disposition of the companion matter, see *Louisiana Patient's Compensation Fund Oversight Board v. Susan Deano*, 03-143 (La.App. 3 Cir. _/_/03), _ So.2d _.

3

## ANALYSIS

We address the PCF's assignment attacking as erroneous the trial judge's ruling on the no cause of action exception first. Our ruling on this question renders all the remaining issues on appeal moot.

While the PCF alleged in its initial petition seeking declaratory relief that "this matter is prescribed as a matter of law," in brief submitted to this court the PCF now cautions it "does not seek to preclude the Deanos' claims pursuant to La.R.S. 9:5628, the prescription/preemption statute applicable to medical malpractice claims."[2] The term prescription, the PCF points out was used in its petition "for lack of a better descriptor for the relief sought." Instead, the PCF contends that its claim arises out of the Deanos' failure to "timely comply with the requirements of the Medical Malpractice Act, and particularly La.R.S. 40:1299.44(C), for seeking approval of their settlement with the health care provider and for preserving their claim against the Fund for additional compensation." The claim it seeks to raise by declaratory petition, the PCF alleges, "arises out of actions, or more appropriately inactions, that occurred **after** the settlement was concluded and the 'Judgment' was entered in the medical review panel proceedings."

We are satisfied the PCF's inability to find a "descriptor" for its alleged cause of action is because it does not exist in the Act or any other codal or statutory provision. The PCF acknowledges La. R. S. 40:1299.44(C) "does not set forth a specific time frame in which a claimant must seek court approval of a settlement."

---

[2] The Deanos argue the PCF is prevented, as affirmed by the holding in *Rey v. St. Paul,* 95-661 (La. App. 4 Cir. 11/16/95), 665 So.2d 109, *writ denied*, 95-3033 (La. 3/22/96), 669 So.2d 1223, from raising a prescription defense following settlement by a qualified health care provider for his full statutory liability. The PCF contends the Deanos' position is misguided from failure to understand the nature of its claim which is not rooted in prescription at all. Not willing to concede *Rey* is dispositive of this issue, the PCF maintains the issue is not relevant here because prescription is not at issue.

4

However, it argues by analogy, and in keeping with the Supreme Court holding in *Horil v. Scheinhorn*, 95-0967 (La. 11/27/95), 663 So. 2d 697, we should read La.R.S. 40:1299.47(A)(2)(a) *in pari materia* with the remainder of the Medical Malpractice Act as requiring the Deanos to file their petition for approval within ninety (90) days from entry of the "Judgment" dismissing the medical review panel proceeding.

We have carefully examined the holding in *Horil* and the limited issue it addressed. As framed by the Supreme Court, it granted the writ application in *Horil* "to determine if La.R.S. 40:1299.44(C) required plaintiff to serve the Fund contemporaneously with his petition for approval of the settlement with the health care providers." *Id.* at 698.

In 1981, Horil instituted a malpractice action against two physicians, the Ochsner Clinic, and the Alton Ochsner Medical Foundation alleging negligent misdiagnosis and failure to warn of the dangerous nature of prescribed treatment. Four years later, on October 10, 1985, Horil voluntarily dismissed the two physicians with prejudice; and, on the same date, the trial court also approved a $100,000.00 settlement dismissing Horil's claim with full prejudice against Ochsner Clinic and the Alton Ochsner Medical Foundation, while reserving his right to proceed further against the Fund. The Fund *never* received *service* of the motions or order dismissing the original defendants.

Almost seven years passed before Horil filed any other pleadings with the court. On April 16, 1992, he filed a first supplemental and amending petition seeking to add the Fund as a party defendant. In response, the Fund filed a motion to dismiss on the grounds of abandonment, which was rejected. It then filed a peremptory exception asserting Horil failed to adhere to the requirements of La.R.S.

5

40:1299.44(C) and, therefore, he had no cause of action. The trial court agreed and dismissed Horil's claim. Horil appealed.

The court of appeal found R.S. 40:1299.44(C) did not apply because plaintiff did not settle for an amount more than the $100,000.00, the total statutory liability of the health care provider; and, he did not agree to a complete and final release, instead reserving his right to seek additional damages from the Fund. *Horil v. Scheinhorn*, 94-940 (La.App. 5 Cir. 3/15/95), 653 So.2d 637, *writ granted*, 95-967 (La. 6/23/95), 656 So.2d 1024. The Court also noted the Fund had no right to intervene or object to the settlement; and, "as a practical matter, the Fund is routinely brought into the lawsuit only *after* a settlement is executed between the health care provider and the claimant." *Id.*, 653 So.2d at 641. It then reinstated Horil's action finding La.R.S. 40:1299.42(D)(5) more appropriately controlled the matter and only required that a claimant give written notice to the Fund when he settles with the original defendants for $100,000.00 and noted that no "time period in which this notice must be made" is specified in the Act.[3] It also noted "[t]he statute is silent as to the proper procedure a claimant is to follow after notifying the Fund, pursuant to La.R.S. 40:1299.42(D)(5)." *Id.* at 641. Since Horil sent a copy of the first supplemental and amending petition to the Fund, the court of appeal found this notice satisfied the requirement of subsection (D)(5). Disagreeing, the Supreme Court concluded the more general notice requirement provided in R.S. 40:1299.42(D)(2) does not trump

---

[3] R.S. 40.1299.42(D)(5) states:

In the event that a partial settlement is executed between the defendant and/or his insurer with a plaintiff for the sum of one hundred thousand dollars or less, written notice of such settlement shall be sent to the board. Such settlement shall not bar the continuation of the action against the patient's compensation fund for excess sums in which event the court shall reduce any judgment to the plaintiff in the amount of malpractice liability insurance in force as provided for in R.S. 40:1299.42(B)(2).

6

the more specific requirements found in R.S. 40:1299.44(C) *when the claimant intends to seek an excess damage claim against the Fund.* *Horil*, 663 So.2d 697. La.R.S. 40:1299.42(D)(5), the Court declared, "does not license a separate settlement vehicle" and the "specifics of La. R.S. 40:1299.44(C) govern." *Id.* at 700. R.S. 40:1299.44(C) provides if the insurer of a health care provider has agreed to settle its liability and the claimant is demanding an amount in excess from the Fund, for a "complete and final release," the procedure set forth must be followed:

> (1)  A petition shall be filed by the claimant with the court in which the action is pending against the health care provider, if none is pending in the parish where plaintiff or defendant is domiciled seeking (a) approval of an agreed settlement, if any, and/or (b) demanding payment of damages from the patient's compensation fund.

> (2)  A copy of the petition shall be served on the board, the health care provider and his insurer, at least ten days before filing and shall contain sufficient information to inform the other parties about the nature of the claim and the additional amount demanded.

> (3)  The board and the insurer of the health care provider or the self-insured health care provider as the case may be, may agree to a settlement with the claimant from the patient's compensation fund, or the board and the insurer of the health care provider or the self-insured health care provider as the case may be, may file written objections to the payment of the amount demanded. The agreement or objections to the payment demanded shall be filed within twenty days after the petition is filed.

> (4)  As soon as practicable after the petition is filed in the court the judge shall fix the date in which the petition seeking approval of the agreed settlement and/or demanding payment of damages from the fund shall be heard, and shall notify the claimant, the insurer of the health care provider or the self-insured health care provider as the case may be, and the board thereof as provided by law.

> (5)  At the hearing the board, the claimant, and the insurer of the health care provider or the self-insured health care provider as the case may be, may introduce relevant evidence to enable the court to determine whether or not the petition should be approved if it is submitted on agreement without objections. If the board, the insurer of the health care provider or the self-insured health care provider as the case may be, and the claimant cannot agree on the amount, if any, to be

7

paid out of the patient's compensation fund, then the court shall determine the amount of claimant's damages, if any, in excess of the amount already paid by the insurer of the health care provider. The court shall determine the amount of which the fund is liable and render a finding and judgment accordingly. In approving a settlement or determining the amount, if any, to be paid from the patient's compensation fund, the court shall consider the liability of the health care provider as admitted and established where the insurer has paid its policy limits of one hundred thousand dollars, or where the self-insured health care provider has paid one hundred thousand dollars.

(6) Any settlement approved by the court shall not be appealed. Any judgment of the court fixing damages recoverable in any such contested proceeding shall be appealable pursuant to the rules governing appeals in any other civil court case tried by the court.

The Supreme Court recognized that "the health care provider (or his insurer) will normally agree on the terms of the compromise prior to the Fund's involvement," but found such practice does not excuse the claimant from complying with R.S. 40:1299.44(C). *Id*. at 701. It held "when the settlement is submitted to the court for approval, the fund must *at that time* be afforded notice and the opportunity to participate, if the claimant expects to seek excess sums." The Court found Horil's "glaring noncompliance with the procedures enunciated within that subsection precluded" his claim. *Id*. at 701. Summarizing, it stated "when a plaintiff seeks court approval of his settlement with a health care provider, he must, *at that time*, assert any excess demands against the Patient's Compensation Fund." *Id*. at 702. Horil never provided the Fund with a copy of his motion nor the order dismissing the health care providers filed in l985. He waited nearly seven years after seeking court of approval of his settlement before serving the Fund with a petition claiming excess damages.

Here, the Deanos forwarded to the PCF a motion notifying it that settlement had been reached between them, the health care providers, and the insurers, and they desired to dismiss their claims against these defendants reserving their right to

8

proceed against it. The PCF's Malpractice Insurance Director even signed the "Judgment." There is no doubt the PCF was aware of the Deanos intent to file an excess damage claim against it. And, it is undisputed the Deanos provided the PCF with the required ten day notice prior to the filing of their petition for approval of the settlement and demand for excess damages. Unlike Horil, the Deanos did not fail to comply with the procedures set forth in La.R.S. 40:1299.44(C).

Nonetheless, the PCF maintains that we should read R.S. 40:1299.47(A)(2)(a) as requiring the Deanos to file their petition for approval and excess damage claim against it within 90 days from the "Judgment" allegedly dismissing the medical review panel proceedings. This subsection states " [t]he filing of the request for a review of a claim shall suspend the time within which suit must be instituted, in accordance with this Part, until ninety days following notification, by certified mail, as provided in Subsection J of this Section, to the claimant or his attorney of the issuance of the opinion by the medical review panel...." The PCF acknowledges no opinion was rendered by the panel and admits the caption is the only quality of a judgment that the document signed by Cheryl Jackson possesses. We join the PCF in its characterization of the document; and, we are convinced that no legal consequence flows from its issuance.

Yet, the PCF insists we should use the date this document was signed as beginning the 90 day delay period found in R.S. 40:1299.47(A)(2)(a). Its position is entirely premised on the following language used in *Horil*:

> We decline to limit the purpose of La.R.S. 40:1299.44(C), however, to mere notice. Much more than simply conveying information, *this provision unmistakably requires that any demands for additional recovery be forthrightly asserted by petition.* Also, as previously indicated, other aspects of La.R.S. 40:1299.44(C) go well beyond ordinary notice, e.g., procedures are specified for determining damages,

9

the potential is established for participation by the oversight board and the health care provider, and rules governing appeals are set forth.

*Absent careful compliance with La.R.S. 40:1299.44(C)*, the Fund stands to be faced with a situation similar to the instant scenario where, despite the passage of several years, no formal demand has been made for additional sums. Understandably, in these circumstances, and even if possessing informal knowledge of a settlement, the oversight board will eventually assume the matter had been resolved to the plaintiff's satisfaction and that no further demand is forthcoming. As persuasively urged by relator, there is an indispensable need for fiscal stability within the Fund. To protect its solvency, the Fund must possess accurate information concerning the amount and number of claims it may be called upon to pay in any given period.

*Horil*, 663 So.2d at 700-01.

The PCF argues "'forthright' compliance with [La. R.S. 40:1299.44(C)], so as to support the 'indispensable need for fiscal stability within the Fund,' dictates prompt action by claimants." Thus, it urges imposing the 90 day period found in R.S. 40:1299.47(A)(2)(a) is appropriate in this case and serves the greater goal articulated by the majority in *Horil*.

Though concurring in the *Horil* majority opinion, Chief Justice Calogero cautioned that the majority's concern "for fiscal stability within the Fund" and for strict compliance with La. R.S. 40:1299.44(C) might prove troublesome when balanced against other concerns in cases where "the claimant's tardiness in acting spans a very brief period as opposed to seven years as in [Horil]." *Id*, at 702. The PCF's reliance on the *Horil* majority's concerns is all that it has to suggest that we should "pull a date out of the statute" and allow it to retroactively defeat the Deanos' excess damage claim, though most assuredly the Deanos' prior counsel had no reason to believe their substantive claim might suffer such fate.[4] The *Horil* majority never

---

[4] The Deanos apparently terminated their prior counsel in this matter believing that he somehow compromised their right to proceed against the Fund; and they have filed a malpractice action against him.

10

once referred to La.R.S. 40:1299.47(A)(2)(a) as establishing a dateline for complying with the procedures set forth in La.R.S. 40:1299.44(C); and, apart from expressing concerns and using the words "forthrightly" and "careful compliance," there is nothing to put an unsuspecting claimant on notice that the future of their right to proceed against the Fund hinged on the meaning of these expressions. The PCF's insistence that we, by judicial fiat, cure a recognized hiatus in the Act is a remedy our Constitution forbids us to administer retroactively. *Jamison v. Hilton*, 98-447 (La.App. 3 Cir. 10/21/98), 721 So.2d 494, *writ denied*, 98-2916 (La. 2/5/99), 730 So.2d 871. Neither are we convinced that the Supreme Court in *Horil* intended to grant the PCF a special, though undescribed, claim to accomplish this end.

## DECREE

For the foregoing reasons, we affirm the trial court's sustaining of the exception of no cause of action and the dismissal of the petition for declaratory judgment. All costs of this proceeding are assessed to the appellant, the Louisiana Patients' Compensation Fund Oversight Board.

**AFFIRMED.**

NUMBER 03-142

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

SUSAN DEANO, JOHN L. DEANO AND MARK GUILBEAU

VERSUS

VIDYADHAR AKKARAJU, M.D., ET AL


NUMBER 03-143

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

LOUISIANA PATIENTS' COMPENSATION FUND OVERSIGHT BOARD

VERSUS

SUSAN DEANO, JOHN L. DEANO AND MARK GUILBEAU


AMY, J., dissenting.

I respectfully disagree that an affirmation is warranted. In my opinion, a reversal is required as I find that the exceptions of res judicata, no cause of action, and no right of action were erroneously maintained.

With regard to the exception of res judicata, the plaintiffs argue that the PCF had full knowledge of the settlement with Dr. Akkaraju as is evidenced by the signature of the PCF's Malpractice Insurance Director on the "Judgment" dismissing the matter before the PCF. The plaintiffs contend that this signature bars the present assertion of prescription by concepts of res judicata and equitable and collateral estoppel. The PCF asserts that the concept of res judicata is inapplicable in this instance as the PCF was not a party to the settlement.

La.R.S. 13:4231 addresses res judicata, providing:

Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:

(1)     If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.

(2)     If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.

(3)     A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.

Although a plea of res judicata is generally premised on a final judgment, such a transaction or settlement of a disputed or compromised matter may also provide the basis for such a plea. *See Ortego v. State, DOTD*, 96-1322 (La. 2/25/97), 689 So.2d 1358. *See also Bailey v. Martin Brower Co.*, 94-1179 (La.App. 1 Cir. 4/7/95), 658 So.2d 1299. However, as the doctrine of res judicata is stricti juris, doubts concerning its application are to be resolved against its application. *Kelty v. Brumfield*, 93-1142 (La. 2/25/94), 633 So.2d 1210.

In my opinion, the PCF's assertion that the matter has prescribed is clearly not an "issue actually litigated . . ." as envisioned by La.R.S. 13:4231(3). The basis for the plea of prescription in the petition for declaratory judgment did not arise until after the settlement reflected in the receipt and release and the "Judgment" signed by Cheryl Jackson. The eleven-month period between the settlement and the petition for approval of the settlement is what is asserted to be at issue in the petition for declaratory action. Accordingly, I conclude that the matter has not been adjudged and offers no valid basis for an exception of res judicata.

Neither do I find merit in the exceptions of no cause of action and no right of action. These exceptions are based on the principle that, following a $100,000 settlement with a qualified health care provider, the PCF appears in the suit for excess damages in the nature of a statutory intervenor and has no basis to raise the issue of prescription. The PCF argues that, it not only has a right to protect the integrity of the fund, but that it has a duty and obligation to do so. It contends it is fulfilling this role by requiring strict adherence to La.R.S. 40:1299.44(C). Furthermore, it argues that, here, the petition for declaratory judgment does not advance a classic prescription argument, but that the matter has prescribed only by operation of the statute following settlement by the qualified health care provider.

The petition for declaratory judgment alleges that the malpractice complained of occurred on March 18, 1997. The petition references La.R.S. 40:1299.47, alleging that "the filing of the Request for a Review of a Claim shall suspend, for ninety days, the time within which suit must be instituted." The petition then indicates that the medical review panel proceeding was resolved on June 7, 2001. Next, referencing the requirements of La.R.S. 40:1299.44, the PCF contends that the parties must petition the trial court for approval of any compromise agreement. It alleges that: "The parties had until September 20, 2001 within which to petition the district court; for approval or to institute proceedings against the Fund." As the petition for approval was not filed by that date, the PCF alleges, "this matter is prescribed as a matter of law."

The PCF's petition asks the court to consider two provisions of the Medical Malpractice Act together to find that the approval of the settlement has prescribed. La.R.S. 40:1299.44(C) provides the procedure to be followed in the event that "the insurer of a health care provider or a self-insured health care provider has agreed to settle its liability on a claim against its insured and claimant is demanding an amount in excess thereof from the patient's compensation fund for a complete and final

3

release . . . ." In *Horil v. Scheinhorn*, 95-0967 (La. 11/27/95), 663 So.2d 697, the supreme court considered a matter in which formal demand for excess recovery from the PCF was not made until seven years after the trial court's approval of a settlement with the negligent health care providers. The supreme court discounted the plaintiffs' argument in that case that La.R.S. 40:1299.44(C)'s purpose was to merely inform the PCF of the settlement, stating:

> We decline to limit the purpose of La.R.S. 40:1299.44(C), however, to mere notice. Much more than simply conveying information, this provision unmistakably requires that any demands for additional recovery be forthrightly asserted by petition. Also, as previously indicated, other aspects of La.R.S. 40:1299.44(C) go well beyond ordinary notice, e.g., procedures are specified for determining damages, the potential is established for participation by the oversight board and the health care provider, and rules governing appeals are set forth.

*Id.* at p. 6; 700-01.

The PCF argues that in order to timely comply with the settlement approval procedures of La.R.S. 40:1299.44(C), the plaintiffs were required to seek approval within ninety days of the dismissal of the medical review claim. The PCF arrives at the ninety-day period by referencing La.R.S. 40:1299.47(A)(2)(a), which provides:

> The filing of the request for a review of a claim shall suspend the time within which suit must be instituted, in accordance with this Part, until ninety days following notification, by certified mail, as provided in Subsection J of this Section, to the claimant or his attorney of the issuance of the opinion by the medical review panel, in the case of those health care providers covered by this Part, or in the case of a health care provider against whom a claim has been filed under the provisions of this Part, but who has not qualified under this Part, until sixty days following notification by certified mail to the claimant or his attorney by the board that the health care provider is not covered by this Part. The filing of a request for review of a claim shall suspend the running of prescription against all joint and solidary obligors, and all joint tortfeasors, including but not limited to health care providers, both qualified and not qualified, to the same extent that prescription is suspended against the party or parties that are the subject of this request for review. Filing a request for review of a malpractice claim as required by this Section with any agency or entity other than the division of administration shall not suspend or interrupt the running of prescription.

4

I find La.R.S. 40:1299.47(A)(2)(a) inapplicable to this matter, however, as the provision relates to the filing of suit after the rendition of an opinion by the medical review panel. This matter does not fit within that category nor do I find any authority that permits the application of this specifically-worded provision to the case at hand.

Although I find no merit in the PCF's argument that operation of La.R.S. 40:1299.47(A)(2)(a) is applicable to the approval of a settlement, I find that the petition for declaratory judgment alleges a cause of action. The supreme court's discussion in *Horil* indicates that timeliness of the petition for approval is a factor in La.R.S. 40:1299.44(C). Furthermore, although the PCF specifically indicates that it is not asserting prescription under La.R.S. 9:5628, the petition contains the facts for doing so as the plaintiffs' petition was not filed until eleven months after the settlement and five years after the alleged malpractice. It is important to note that, in review of an exception of no cause of action, the court reviews the face of the petition, and not the arguments advanced by the moving party. Accordingly, while I find no merit in the PCF's argument regarding the applicability of La.R.S. 49:1299.47(A)(2)(a), I conclude that the petition for declaratory judgment adequately alleges a possible cause of action for prescription. This finding defeats an exception of no cause of action as "[e]very reasonable interpretation must be accorded the language of the petition in favor of maintaining its sufficiency and affording to the plaintiff the opportunity of presenting evidence at trial." *Jackson v. State ex rel. Dept. of Corrs.*, 00-2882, p. 4 (La. 5/15/01), 785 So.2d 803, 806. Due to the presence of this cause of action, I find that the maintaining of the exception was in error.

Finally, I find error in the maintaining of the no right of action. In this exception, the plaintiffs assert that the PCF cannot raise the issue of prescription as its role in a suit after settlement with a qualified health care provider is that of a statutory intervenor.

5

The plaintiffs correctly point out that in cases in which a qualified health care provider has entered into a settlement for $100,000, the PCF's status in a suit has been described as that of a statutory intervenor. *See Bonano v. Jefferson Parish Hosp. Dist.*, 95-2799 (La. 1/26/96), 666 So.2d 653. Other courts of this state have found that, due to this intervenor status, the PCF is incapable of raising an exception of prescription. *See, e.g., McGrath v. Excel Home Care, Inc.*, 01-1270, 01-1271 (La.App. 5 Cir. 3/26/02), 810 So.2d 1283, *writ denied*, 02-1344 (La. 11/27/02), 831 So.2d 284; *Miller v. Southern Baptist Hosp.*, 00-1352 (La.App. 4 Cir. 11/21/01), 806 So.2d 10, *writ denied*, 01-3379 (La. 3/28/02), 811 So.2d 943; *Rey v. St. Paul Fire and Marine Ins. Co.*, 95-0661, 95-0662 (La.App. 4 Cir. 11/16/95), 665 So.2d 109, *writ denied*, 95-3033 (La. 3/22/96), 669 So.2d 1223. Although the Louisiana Supreme Court has not addressed this issue, I note that, in *Horil*, 95-0967; 663 So.2d 697, an exception of prescription filed by the PCF was considered by the court. The opinion contains no indication that the PCF lacked a cause or right of action in filing the exception, an observation the trial or appellate court is capable of making under La.Code Civ.P. art. 927(B). In fact, the supreme court affirmed the exception of prescription filed by the PCF.

Given the supreme court's discussion in *Horil*, I do not find that the PCF is without a right to assert the principle of prescription. Moreover, the type of compliance with La.R.S. 40:1299.44(C) envisioned by the supreme court could only be enforced in the event the PCF has the right to raise prescription issues. Accordingly, I conclude that the trial court erred in sustaining the no right of action. I would reverse the exceptions sustained by the trial court and, therefore, would reverse the dismissal of the PCF's petition for declaratory judgment.

Therefore, I respectfully dissent.