STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

07-806

PETER ROMERO, ET AL.

VERSUS

DARRYL ELIAS, M.D., ET AL.

**********
APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 84,834-G
HONORABLE CHARLES LEE PORTER, DISTRICT JUDGE
**********

**GLENN B. GREMILLION**
**JUDGE**

**********

**REVERSED AND REMANDED.**

John L. Hammons
Nelson & Hammons
705 Milam Street, Suite A
Shreveport, LA 71101
(318) 227-2401
Counsel for Plaintiff/Appellant:
    Peter Romero

Thomas F. Porter, IV
Attorney at Law
P. O. Box 53320
Lafayette, LA 70505
Counsel for Plaintiff/Appellant:
    Peter Romero

**Joel E. Gooch**
**Allen & Gooch**
**P. O. Drawer 3768**
**Lafayette, LA 70502-3768**
**(337) 291-1210**
**Counsel for Defendant/Appellee:**
    **Louisiana Patients' Compensation Fund**

GREMILLION, Judge.

The plaintiffs, Peter and Hope Romero, individually and as the administrator of their minor daughter, Kayla Marie, appeal the judgment of the trial court ordering the dismissal of their claims against the defendant, the Louisiana Patients' Compensation Fund (PCF), based on a finding that they had abandoned their suit. We reverse and remand.

## FACTS

The Romeros instituted suit against Dr. Darryl Elias, Dr. Edward Haile, the Iberia General Hospital & Medical Center, and the Louisiana Hospital Association Trust Fund on August 20, 1996, subsequent to the birth of their daughter. In their petition, they listed numerous allegations of negligence on the part of the defendants stemming from their failure to diagnose their daughter antipartum as suffering from hydrocephalus and spina bifida. On August 10, 1998, the Romeros and Dr. Haile filed a Joint Petition for Authorization to Settle Medical Malpractice Claim in the amount of $100,000, which was granted by the trial court on December 17, 1998. In granting the judgment, the trial court denied objections to the judgment which were filed by the PCF. The trial court further ordered the Romeros to mediate the claim for excess damages with the PCF Oversight Board and continued the trial on that issue without date. The PCF filed a motion to amend the judgment on January 4, 1999.

On April 14, 1999, Dr. Haile and the Romeros filed a Judgment of Dismissal with Prejudice and with Reservation of Rights dismissing their claims against Dr. Haile with prejudice, but reserving their rights to excess damages against

2

the PCF. That same day, they entered into a Judgment of Dismissal for Non-Suit with prejudice and with Reservation of Rights against Dr. Elias, in which they dismissed their claims against him with prejudice, but reserved their rights to seek damages from the PCF.

On September 26, 2000, the trial court denied the PCF's motion to amend the December 17, 1998 judgment. On July 17, 2000, the trial court set a hearing on a Motion for New Trial for August 10, 2000. Presumably this motion was filed by the PCF, however, the motion and accompanying memorandum are not located in the record. On November 30, 2000, the PCF filed a peremptory exception of no cause of action against the Romeros' Petition for Excess Damages. We note that there is no evidence of this petition in the record. This matter was set for hearing on January 26, 2001. The Romeros filed an unopposed motion to continue that hearing on January 11, 2001, which was granted.

The next matter filed in this suit was a motion to withdraw as counsel, filed by the Romeros' counsel on August 16, 2004. On February 18, 2005, new counsel for the Romeros was enrolled as counsel of record. On May 25, 2006, the Romeros filed a Motion for Summary Judgment on Damages and Medical Bills. On July 2, 2006, they filed an Amended and Supplemental Petition naming the PCF, the PCF Oversight Board, and Charles Foti, the Louisiana Attorney General, as defendants. In response, the PCF filed declinatory and peremptory exceptions arguing that the Romeros' suit had been abandoned pursuant to La.Code Civ.P. art. 561. Following a hearing, the trial court granted the exception and rendered an Order of Dismissal. This appeal by the Romeros followed.

3

On appeal, the Romeros argue that the trial court erred in granting the peremptory exception of abandonment.

**DISCUSSION**

In claiming that the trial court erred in finding their suit abandoned, the Romeros argue that the PCF has a good faith, continuing duty to compensate them for all damages stemming from Dr. Haile's negligence. Furthermore, they claim that no action has taken place in this matter as a result of the PCF's bad faith and ill practices in failing to comply with the trial court's order to mediate. As such, they argue that an affirmation of the trial court's judgment would, in effect, reward the PCF's bad faith behavior. In support of their argument, they point to correspondence from the PCF to their former counsel. However, as that evidence was not in the record, we may not consider it.

The PCF filed for abandonment pursuant to declinatory and peremptory exceptions. Although abandonment should properly be raised pursuant to a motion, we will address it as an exception.

In *Kelty v. Brumfield*, 534 So.2d 1331, 1333-34 (La.App. 4 Cir. 1988), *writs denied*, 536 So.2d 1221, 1222 (La.1989) (alteration in original) (footnote omitted), the fourth circuit considered whether the PCF could raise a peremptory exception of prescription:

> The Medical Malpractice Act does not contemplate the Fund as a party defendant. *Williams v. Kushner*, 449 So.2d 455 (La.1984). The Fund is a "budget unit" of the State. *La.R.S. 40:1299.44(A)(5)(g)*. The functions of administering the Fund are carried out by the commissioner of insurance. *La.R.S. 40:1299(A)(5)(b)*. The act does not give the Fund status as a co-obligor or insurer of the health care provider. It is a

creature of the legislature designed to satisfy settlements and/or judgments against health care providers in excess of $100,000.00. The Fund does not have to be made a party to the litigation, nor cast in judgment in order to disburse its funds. The only requirement is a final judgment or a court approved settlement, or a final arbitration award, against the health care provider in excess of one hundred thousand dollars. *La.R.S. 40:1299.44(B)(2)(a-c).* See also, *Forstall v. Hotel Dieu Hospital*, 429 So.2d 213 (La.App. 4th Cir.1983), writ denied 433 So.2d 1054.

In *Felix v. St. Paul Fire and Marine Ins. Co.*, 477 So.2d 676 (La.1985), the Supreme Court [sic] defined the Fund as a statutory intervenor "who has an interest in the proceedings between the claimant and the health care provider because any damages in excess of one hundred thousand dollars are payable by the Fund." *Id. at 680, 681.* Our interpretation of the Act makes it clear that the only issue confronting the fund once a maximum settlement has been reached with the health care provider is the amount of damages. *La.R.S. 40:1299.44(C).* If the settlement is less than the maximum one hundred thousand dollars, the plaintiff must still prove liability if he seeks damages in excess of the maximum. However, where the settlement is for the maximum amount, the statute is clear that *liability* is admitted.

Thus the Fund is limited by the provisions of the Medical Malpractice Act, the act which created it. We are of the opinion that the legislature did not intend to give the Fund equal status as a party defendant once the health care provider settled for its maximum liability. In those instances, the legislature reserved to the Fund only the right to contest the amount of damages and nothing more. We therefore conclude, under the factual scenario of this case, that the Fund was not given the status of "creditor or other person" within the meaning of Civil Code Article 3453. It does not have the right to invoke the provisions of that article, nor does it have the right to question, for any other reason, the health care provider's statutorily admitted liability.

In *Weeks v. Louisiana Patient's Compensation Fund*, 03-469 (La.App. 3 Cir. 11/5/03), 858 So.2d 851, *writ denied*, 03-3317 (La. 2/6/04), 865 So.2d 734, we agreed with the fourth circuit's finding in *Kelty* and held that the PCF lacked standing to raise the exception of prescription against the medical malpractice plaintiffs after the health care provider settled for its maximum liability.

5

In *McGrath v. Excel Home Care, Inc.*, 01-1270, 01-1271 (La.App. 5 Cir. 3/26/02), 810 So.2d 1283, *writ denied*, 02-1344 (La. 11/27/02), 831 So.2d 284, the fifth circuit also held that the PCF lacked standing to raise an exception of prescription, but went further to hold that it lacked standing to raise any exceptions in a medical malpractice suit after the limitation of liability was satisfied. The fifth circuit stated:

> The Louisiana Supreme Court has not yet addressed the issue of whether the settlement precludes the PFC [sic] from raising exceptions. However, the Fourth Circuit has held that, once the insurer has paid its policy limits, statutory liability is admitted and the Fund has no standing to raise the issue of prescription. *Miller v. Southern Baptist Hosp.*, 00-1352 (La.App. 4th Cir.11/21/01), 806 So.2d 10; *Rey v. St. Paul Fire and Marine Ins. Co.*, 95-0661 (La.App. 4th Cir.11/16/95), 665 So.2d 109, 111, *writ denied*, 95-3033 (La.3/22/96), 669 So.2d 1223. "Rather, it is for the Legislature to determine whether additional rights should be given the Fund in order to provide it with greater protection against questionable claims." *Rey*, 665 So.2d at 111. Conversely, if the settlement is for less than the $100,000 limit of liability, the PFC [sic] has standing to raise the exception of prescription. *See: St. Romain v. Luker*, 00-1366, (La.App. 1st Cir.11/9/01), 804, So.2d 85.
>
> We agree with the Fourth Circuit decisions in *Rey* and *Miller*, and find that the PFC [sic] does not have the right to raise the exception of prescription, and further is not entitled to raise *any* exceptions after the limitation of liability has been satisfied. The statutes and jurisprudence are clear that such payment is an admission of liability. The PCF does not stand in the shoes of the Defendant. It is a creature of the legislature created solely to pay the excess damages to an injured plaintiff who can prove that his excess damages were caused by the health care provider's malpractice. To allow it to raise exceptions after the payment would be to permit it to raise defenses only given to a Defendant, which it is not. *See: McCrory [v. Jefferson Parish Hosp. Serv. Dist. No. 2*, 96-624 (La.App. 5 Cir. 12/30/96)], 686 So.2d [1060 ,] 1064. Thus, we find that the PCF cannot raise the exceptions at this time.

*Id.* at 1288 (alterations in original) (footnote omitted).

We agree with the fifth circuit that the PCF lacks standing to raise any exceptions once the liability of the health care provider is admitted to the fullest

6

extent.  Notwithstanding this finding, in the interest of justice, we will now address whether the trial court was correct in finding that the Romeros' action has been abandoned because it is conceivable that the PCF will now file its action as a motion.

As legislation which is in derogation of the rights available to tort victims under the general tort law, the Medical Malpractice Act must be strictly construed. *Kelty v. Brumfield*, 93-1142 (La. 2/25/94), 633 So.2d 1210.  "Moreover, because the cap on damages imposed by [the Medical Malpractice Act] harshly impacts the most severely injured victims, mitigating benefits or advantages provided for them by the [law] must be liberally construed . . . ." *Id.* at 1216.

Pursuant to La.R.S. 40:1299.44(C)(5)(e), a settlement containing an admission of liability operates as "a declaration or promise that the PCF will pay any damages proven to be owed by the health care provider and gives the medical malpractice victim the right to expect or claim payment for damages proven to be owed by the health care provider." *Weeks*, 858 So.2d at 854.

Louisiana Revised Statute 40:1299.44(C) provides the procedural steps a plaintiff must take if a settlement is reached with a health care provider and the plaintiff alleges damages exceeding the statutory cap of $100,000 owed by the health care provider.  These steps include filing a petition against the health care provider, serving the petition on the PCF, the health care provider, and his insurer informing them of the additional amount demanded, allowing the PCF to file any objections to the petition, and a hearing on the petition in the trial court. La.R.S. 40:1299.44(C)(1), (2), (3), and (4).  At the hearing on the petition, if the parties cannot agree as to the amount to be paid by the PCF, then a subsequent trial is required so that evidence

may be presented and a determination reached by either a jury or the trial court as to the amount of excess damages owed to the patient. La.R.S. 40:1299.44(C)(5)(a). However, La.R.S. 40:1299.44(C) does not provide a time limit within which the plaintiff must comply with these procedures.

In *Horil v. Scheinborn*, 95-0967 (La. 11/27/97), 663 So.2d 697, the supreme court held that the detailed provisions of La.R.S. 40:1299.44(C) trumped the more general provisions of La.R.S. 40:1299.42(D) in situations where a plaintiff has settled with a health care provider and seeks additional recovery from the PCF. In holding that La.R.S. 40:1299.44(C) applied, the supreme court affirmed an exception of no cause of action because the plaintiff failed to comply with the procedures set forth therein at the time he sought court approval of his settlement with the health care provider. Instead, the plaintiff waited almost seven years after settling before instituting proceedings against the PCF. The supreme court stated:

> While it is true that the claimant and the health care provider (or his insurer) will normally agree on the terms of the compromise prior to the Fund's involvement, when the settlement is submitted to the court for approval, the Fund *must* at that time be afforded notice and the opportunity to participate, if the claimant expects to seek excess sums. Here, despite, in October 1985, expressly reserving his right to proceed against the Fund specifically under portions of La.R.S. 40:1299.44(C), Horil's glaring noncompliance with the procedures enunciated within that subsection precludes the instant claim.

*Id.* at 701(alteration in original) (footnote omitted). The supreme court stated that it was also persuaded by the PCF's argument for the need for fiscal stability. It stated, "To protect its solvency, the Fund must possess accurate information concerning the amount and number of claims it may be called upon to pay in any given period." *Id.* In his concurring opinion, Chief Justice Calogero expressed reservations with the

8

majority's ideas:

> First, I have a problem with the majority's concern for "fiscal stability within the Fund." The state does not appropriate money for the Fund. If the fund becomes insolvent, the state is not responsible for the Fund's obligations. Instead the claimants suffer the loss or delay in receipt of payment.
>
> Second, I am not willing to state that a claimant's failure to strictly adhere to the rules set forth in R.S. 40:1299.44(C) automatically costs him his right to pursue the Fund. I would leave for another day the case in which a claimant's tardiness in acting spans a very brief period as opposed to seven years as in this case.

*Id.* at 702.

In the more recent case of *Deano v. Akkaraju*, 03-142 (La.App. 3 Cir. 10/1/03), 856 So.2d 155, *writ denied*, 03-3020 (La. 2/6/04), 865 So.2d 742, we refused to hold that a plaintiff, who settles with a health care provider, had ninety days in which to seek court approval of that settlement, in compliance with La.R.S. 40:1299.47. In that instance, the plaintiff settled with the health care provider, but waited over eleven months before seeking court authority for approval of the settlement.

In the case at hand, the Romeros followed the procedures set out in La.R.S. 40:1299.44(C). They filed a petition seeking authority from the trial court to settle their claim against Dr. Haile. Notice of the petition was served on the PCF, who then made numerous objections to the settlement. These objections were denied by the trial court. The trial court entered judgment in this matter on December 17, 1998, authorizing the joint petition to settle the Romeros' medical malpractice claim against Dr. Haile in the amount of $100,000, and reserving their rights to proceed against the PCF for damages up to $400,000. A Judgment of Dismissal With

9

Prejudice and Reservation of Rights was rendered on April 14, 1999, dismissing the Romeros' claims against Dr. Haile. The judgment further acknowledged that the Romeros and the PCF had agreed to mediate the claim for excess damages.

Louisiana Revised Statute 40:1299.44(C)(5)(a) provides no time limit in which the claim for excess damages must be litigated. It merely provides that if the parties cannot agree on the amount to be paid by the PCF, then:

> [T]he trier of fact shall determine at a subsequent trial which shall take place only after the board shall have been given an adequate opportunity to conduct discovery, identify and retain expert witnesses, and prepare a defense, the amount of claimant's damages, if any, in excess of the amount already paid by the insurer of the health care provider.

La.R.S. 40:1299.44(C)(5)(a).

Although nothing occurred of record from November 30, 2000, until May 25, 2006, when the Romeros' current counsel filed a motion for summary judgment, we find that this case differs from *Horil*, in that the Romeros did follow the procedures set out in La.R.S. 40:1299.44(C). Strictly construed, we find that La.R.S. 40:1299.44(C), does not specify the time in which the Romero should have pursued their claim against the PCF to its conclusion. We note that they obtained a judgment reserving their rights against the PCF. We again note that a judgment prescribes in ten years. La.Code Civ.P. art. 2031. While we do not specifically address the ten-year prescriptive period as it relates to the Medical Malpractice Act, we do note that the time limit had not run when the Romeros attempted to enforce their judgment. They followed the procedures set out in Section 1299.44(C), up to receiving a determination on their excess damage claim. The PCF was put on notice that this claim was filed and could have taken any necessary steps to protect itself financially

10

concerning the potential amount of this claim. Accordingly, we find that the trial court erred in finding that the Romeros' claim had been abandoned.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is reversed, and the matter is remanded for further proceedings. Pursuant to La.R.S. 13:5112, the costs of this appeal are assessed to the Louisiana Patients' Compensation Fund in the amount of $9,591.66.

**REVERSED AND REMANDED.**

11